[No. 30978.   Department Two.   August 15, 1949.]

IDA GRAY, *Respondent,* v. W. WILSON *et al., Defendants,*
BLUE GRAY STAGES, INC., *Appellant.*[1]

*Lester T. Parker,* for appellant.

*John J. Langenbach,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment
in the amount of $12,132.50 damages for personal injuries
sustained as the result of a collision. Plaintiff commenced
action against Wilson and Vane as the owners of a truck,
and Blue Gray Stages, Inc. for damages in the amount of
$12,132.50, sustained as the result of the joint negligence
of the defendants. It was stipulated by the parties that de-
fendant Vane would be dismissed from the action. The jury
returned a verdict in favor of the plaintiff and against the
defendant, Blue Gray Stages, in the sum of $12,132.50, the
exact amount sued for.

[1]Reported in 208 P. (2d) 1171.

Error is assigned on the refusal of the trial court to reduce the amount of the verdict, or, in the alternative to grant a new trial, for the reason that the verdict was so excessive as to indicate that it was rendered under passion and prejudice. At the time of the collision, Mrs. Gray was thrown to the floor of the bus and suffered injuries to her right shoulder and to the wrist and thumb of her right hand. She was given emergency treatment by Dr. L. C. Neace. Dr. Neace testified that she sustained a fracture at the base of the thumb; the first metacarpal was displaced. The fracture was reduced and put in a cast. This was followed by diathermy and splinting. His charge for treatment was sixty dollars. He testified under cross-examination that it seemed to heal normally.

About a month later, she went to Dr. John Straumsjford, of Astoria, Oregon, who treated her from December 6, 1946, to November 24, 1947. He testified:

"A. On examination it showed a swelling of the hand and finger, with smooth glistening skin, very painful and limited movement of all the fingers and painful swollen wrist as well as very limited motion on the shoulder joint which was painful. Q. Did you treat her at that time? A. Yes. Q. What treatment? A. I would say we made X-ray studies of the wrist and shoulder. The X-rays of the shoulder showed no fracture or dislocation or calcium deposit about the shoulder. The X-rays of the wrist showed a degenerative change in one of the small bones of the wrist with diminution in the joint space between the metacarpal,—between the first metacarpal; that is this bone of the thumb (indicating) and displacement of the first metacarpal radia towards the radius. The treatment consisted of novocaine injection of the shoulder below the area of the upper part of the shoulder with casual movement of the joint of the wrist and hand to restore the function of the hand. I saw her once a week and gave an injection to the shoulder for about three months. . . . A. With regard to the shoulder I do not believe there is any real likelihood of permanent disability in the shoulder, although it is still after two years, it is painful. When I saw her first she could not elevate the shoulder more than about 45 degrees from her body. She has full range of motion in the shoulder but still somewhat painful. I believe that the disability from the shoulder will

gradually subside completely. . . . Now with reference to the hand the disability is almost completely confined to the thumb, although the motion of the other fingers of course is accompanied by the movement of the thumb. When you have a movement of the thumb that is painful, she does not have full range of motion in the thumb; and there is an arthritic condition, traumatic arthritic condition of the thumb as a result of the injury, which I believe is permanent. The condition involving the thumb I believe is permanent."

His bill was $102.50. Under cross-examination, he testified:

"Q. The permanent result of that injury existing the last time you saw her was restricted movement of the thumb? A. And painful;—there is one more thing I forgot. The hand is still cold, which means that the injury has affected the circulation. Q. As far as the permanent injury to the hand is concerned the thumb has restricted movement? A. Restricted and painful. Q. As far as the pain question, you arrived at that from her? A. Yes sir through her statement. Q. From the result of all your examination of Mrs. Gray, the only permanent injury you have been able to find except from her own testimony is restricted movement of the thumb. A. Yes sir and some evidence of the arthritis of the joint on this point about the wrist bone."

Mrs. Gray testified that, for seven years prior to the accident, she had been doing housework for Henry Goodrich, of Astoria, for seventy-five dollars a month and board and room; that since the accident she did not receive any regular pay, but was merely given spending money from time to time. Prior to the trial she answered the following interrogatories:

"Q. The question was 'You say she was paying you $75 a month?' A. Yes at the time of the accident. Q. When did she pay you, did you have a regular day of the month you received pay? A. No. Q. Did she always pay you a fixed amount? A. No. Q. It was irregular payments she paid you? A. Yes. Q. Did you keep any record of it? A. No. Q. She would give you different amounts at different times? A. Yes. Q. You never kept any record? A. No. Q. Was there any understanding between you and the Goodrich's prior to the accident how much you were to receive? A. No. Q. You were just staying there as a sort of a friend

and they would give you money. A. Yes. Q. Did you have any other income at that time? A. No."

On December 17, 1948, at the hearing on the motion for a new trial, the following occurred:

"Mr. Parker: You are allowing $225 for three months at $75 a month? The Court: That is right; from the time of the accident, three months. Mr. Parker: You are allowing 15 months or $750? The Court: Yes. Mr. Parker: Then you allow additional six months at $50.00 a month; $300? The Court: Yes. $175 for medical bill. The Court: You think that $750 does not cover all the time Mr. Langenbach? Mr. Langenbach: No, it is over six months. Mr. Parker: Then you allow $2500 making a total— The Court: When was this accident? A. Oct. 7, 1946. Mr. Langenbach: Six months to the time of trial. The Court: I think probably that should be increased $200— $750— that will be for 22 months, is that right? I think that figure $750 will be raised to $950 which will make $4170.00. So that is the best the court can do. Now is it all right to allow the plaintiff ten days in which to consider it? Mr. Parker: Well yes, we have no objection. The Court: Of course you have a right to appeal. No question about that. Mr. Langenbach: I don't see why you should want to appeal from that. The Court: Let us understand the court. If the plaintiff thinks he can sustain that judgment the motion for new trial will be denied today. Mr. Langenbach: We do not have to sustain it in the supreme court. It can be reduced. The Court: Then the motion for new trial denied. Is that what you want? Mr. Langenbach: No. I think the judgment was excessive, but I think to reduce it to that extent is unreasonable. The Court: Twenty five hundred dollars for the injury? Mr. Langenbach: I do. The Court: I think it is very liberal. I am giving you a choice. If you want the court to deny the motion for a new trial it will be denied. Mr. Langenbach: Well I dislike to have my client put to this expense, but I am willing to submit it to her. She is the one who has to decide. If I was the client I would say take the chance on appeal, but that is for her to say. She has to make the decision. The Court: I think that is right. The matter will be taken under advisement then until— Mr. Langenbach: The court is of the opinion now that the reasonable amount would be $4170.00. The Court: That is right. Mr. Langenbach: I am writing to her today and we will have an answer definitely."

On December 27, 1948 Mr. Langenbach reported that his client had consulted with an attorney in Oregon, who thought the verdict was not excessive, so she decided not to take the reduction. The court stated:

"The court did not intend and does not now intend to make any statement with reference to the amount of the award as made by the jury. At the time the court indicated this allowance it was on the statement that the court understood as being made by counsel for plaintiff that he thought the verdict should be cut; and the court did not indicate and does not now indicate that he has any opinion with reference to the amount of the award. That was within the province of the jury, but it was the verdict of the jury and I doubt the advisability of the present position of the plaintiff that the court is indicating any disagreement with the award of the jury. But if the plaintiff wants to take the position apparently being taken now which was contrary to the position as taken before, the court is not intending and has never intended to make any comparison with the amount of the award and with the verdict of the jury, and therefore the motion for a new trial is denied."

The order denying the motion for new trial stated:

"The attorney for plaintiff, in the course of the argument, stated that he thought the verdict was too large. The court then indicated the following figures, and if they were not acceptable to the plaintiff, then the motion for a new trial would be denied. The court indicated the following figures: 3 months time loss at $75.00, $225.00; 19 months time loss at $50.00, $950.00; six months future time loss at $50.00, $300.00; doctor bills of $195.00 and general damages of $2500.00 or a total judgment of $4170.00.

"It appeared that said amounts are not acceptable to the plaintiff.

"Now, therefore, it is by the court ordered, adjudged and decreed that the motion for a new trial of the defendant Blue Gray Stages, Inc. be and the same is hereby denied.

"Done in open court this 28th day of December, 1948."

■■ The record speaks for itself. No useful purpose would be served by any further discussion of the facts. Suffice it to say, we are convinced that the award by the jury of the exact amount sued for was excessive and was occasioned by passion and prejudice, and should be reduced;

or in the alternative, a new trial allowed. In justice to the trial judge, we wish to state that we are convinced it was not his purpose to interfere with the verdict of the jury. When both sides agreed that the verdict was excessive, he acted as a good Samaritan and suggested what he considered to be fair and just damages.

We agree with him. He had the witnesses (especially the respondent) before him, and was in a much better position to judge the extent of respondent's injuries than we are.

"It is undoubtedly within the power of the appellate court to impose terms as a condition of affirmance. This power is most frequently exercised in cases of verdicts for damage in excess of the damages which the plaintiff ought in right and justice to recover. In such cases, where no other prejudicial errors are established, the court may affirm the judgment on condition that the plaintiff remit from his judgment the amount by which his judgment is determined to be excessive." 3 Am. Jur. 677, Appeal and Error, § 1165.

In the early case of *King County v. Ferry,* 5 Wash. 536, 32 Pac. 538, 34 Am. St. 880, 19 L. R. A. 500, this court held:

"Considering the time that has been devoted to this case, both in this court and the court below, and the great amount of costs which a new trial would necessarly involve, we deem it advisable, under the authority conferred on this court by § 1429 of the Code of Procedure, to decree that, if the respondent within thirty days from the filing of this opinion, shall file with the clerk of this court its agreement to remit the sum of $22,064.34 from the judgment of $29,143.60, obtained by it in the court below, the remainder will be allowed to stand; but upon its failure so to agree, the judgment will be reversed and the cause remanded for a new trial."

Section 1429, above referred to, is now Rem. Rev. Stat., § 1737 [P.P.C. § 5-67]. See also *Carton v. Eyres & Seattle Drayage Co.,* 117 Wash. 536, 201 Pac. 737.

If within thirty days after the going down of the remittitur, respondent shall file an agreement to remit from the judgment the amount in excess of $4,170 (which we think is the maximum award warranted by the most favor-

able view of the evidence), the judgment will stand affirmed for that amount; otherwise, the judgment will be reversed and the cause remanded with instructions to grant a new trial. In either event, appellant will recover its costs of this appeal.

SIMPSON, C. J., JEFFERS, ROBINSON, and GRADY, JJ., concur.