[No. 35381.   Department One.   January 11, 1962.]

E. D. MARTIN, *Appellant*, v. FOSS LAUNCH & TUG COMPANY, *Respondent.**

*Reported in .367 P. (2d) 981.

*O'Leary, Meyer & O'Leary* and *Benn R. Agor*, for appellant.

*Guttormsen, Scholfield, Willits & Ager*, for respondent.

ROSELLINI, J.—The plaintiff was injured while employed on a tug boat belonging to the defendant, as a result of the unseaworthiness of the vessel. In the trial of this action, the jury was instructed that the defendant was liable as a matter of law and that the sole issue for its determination was the amount of damages. It returned a verdict awarding the plaintiff $6,160 for care and maintenance, and $34,074 for personal injuries, a total of $40,234.

In ruling on the defendant's motion for a new trial, the trial court determined that the verdict was excessive and gave the plaintiff the option of accepting a reduced verdict or submitting to a new trial. This appeal was taken from the order entered on that decision.

There is a statutory presumption that the amount of damages awarded by the verdict of the jury is correct. RCW 4.76.030. And this court is in any event reluctant to interfere with the conclusion of a jury, when fairly made, as to the amount of damages a litigant has sustained, as the determination of damages is primarily a jury function. *Anderson v. Dalton*, 40 Wn. (2d) 894, 246 P. (2d) 853, 35 A. L. R. (2d) 302.

■   However, it is within the inherent power of the trial court, in the exercise of its discretion, to relieve a party where an injustice has been done in the awarding of an excessive verdict, by giving the prevailing party the option to accept a smaller amount or submit to a new trial. *Scobba v. Seattle,* 31 Wn. (2d) 685, 198 P. (2d) 805. This court likewise has an inherent power to so reduce a verdict. *Anderson v. Dalton, supra.*

In this case, the trial court reduced the verdict from $40,234 to $11,028. We are fortunate in having before us the court's memorandum decision in which the basis for its computation is set forth.

Briefly stated, the facts set forth in this memorandum opinion are: The plaintiff was employed on the tug *Anna Foss* as a member of the crew. On the date of the accident, November 25, 1957, the tug had a barge under tow, and one of the lines was attached to a large stanchion on the barge, which, being alongside the tug, was a few feet above the tug's deck. As the plaintiff stepped from the engine room onto the deck, this stanchion broke, fell on the plaintiff, striking him in the chest, hip, and leg, and knocked him to the deck. Within an hour or less, the plaintiff was taken to the United States Public Health Service Hospital, known as the Marine Hospital, in Seattle, where treatment was offered. The plaintiff then voluntarily left for his home in Olympia. He received some medical treatment there. In March 1958, he consulted Dr. O'Neil, of Seattle, who has since been his attending physician.

The jury was justified in finding that prior to the accident, the plaintiff had two congenital abnormalities in his back, consisting of the absence of the bony hook joint of the fifth lumbar vertebra and an enlarged transverse process of the fifth lumbar vertebra. These defects were asymptomatic prior to the injury. In the accident the plaintiff received a sprain contusion of the lumbar spine, complicated, with nerve root injury, and a sprain contusion of the sacro-coccygeal area. Because of the injuries, the plaintiff was disabled from following his regular occupation of operator of heavy-duty logging equipment and trucks, and from fol-

lowing other occupations of heavy physical labor involving the use of the back.

The injuries caused the plaintiff pain in the low back, which was intermittent, depending upon the extent of his physical activities and other factors; and he also suffered a partial numbness in his legs, particularly the left leg.

The evidence showed that prior to the accident, the plaintiff had been employed in various occupations involving physical activity; that he had no trouble with his back and was able to engage in heavy work notwithstanding his congenital deformity. After the accident, he was unable to follow any activity requiring substantial use of his back (including driving motor vehicles) for sustained periods of time.

Having been directed to find in favor of the plaintiff because the defendant was liable as a matter of law, the jury was instructed that, in awarding damages, it could consider the nature and extent of the injuries, plaintiff's pain and suffering, any permanent disability, and any loss of earnings. It could not consider medical expense voluntarily incurred by the plaintiff, since free medical care was available to him at the Marine Hospital. It was also instructed that the plaintiff was entitled to maintenance for such reasonable period of time as was necessary to enable him to receive the maximum benefits from reasonable medical care. The jury was further instructed that the plaintiff had a duty to exercise reasonable care and diligence in seeking medical treatment, and that he was not entitled to recover for any injury, loss or damage which could have been avoided by the exercise of such care.

At this point, the trial court set forth the reasons why it felt the verdict was excessive:

"Under plaintiff's own medical testimony, his attending physician and his consultant determined not later than July 22, 1958, that conservative treatment had failed. Surgical assessment was recommended on that date, and again on August 27, 1958. Making due allowances for the serious nature of the operation recommended, and for the time within which the patient might reflect upon the advice given, and make necessary preparations, reasonable minds

could not find that plaintiff was justified in deferring the operation beyond September 10, 1958. His doctors agreed that six months after surgery, he would be able to resume his usual occupation. Therefore, plaintiff's right to maintenance would terminate not later than March 10, 1959, 471 days after the accident. At $8.00 per day [the amount stipulated to by the parties], the maximum award for maintenance would be $3,528.00 less the $240.00 paid. The jury awarded $6,160.00 less $240.00 paid, or $2,632.00 in excess of the maximum amount justified by the evidence.

"The jury's award of $34,074.00 for damages for personal injuries must be evaluated as compensation for lost earnings, pain, suffering, and general damages for disability. Since plaintiff's medical testimony was that six months after surgery he would be able to return to his former occupation, and since there was no evidence that following his return to duty his earning ability would be further impaired, compensation for any lost earnings must be limited to the same period during which maintenance was payable. Four hundred and seventy-one days is roughly 1.3 years. Taking plaintiff's earning ability at $5200 per year, which is the highest single year shown by the evidence, his lost earnings would come to approximately $6,760.00, from which should be deducted maintenance allowable or paid, leaving a net amount of lost earnings of approximately $3,000 as the highest figure justified by the evidence. As compensation for pain, suffering and general damages for residual disability, $10,000 would seem to be a maximum figure. The sum of these two maxima, $13,000, is the highest sum that the jury might award plaintiff for general damages. The actual award of $34,074 was therefore excessive to the extent of $21,074."

The court then opined that these amounts were the maximum that the jury could find; determined that $3,000 for pain, suffering, and general damages for residual disability would not have been too low, but that $7,500 was, in its opinion, a fair amount for these items. This was the sum, plus $3,528 for maintenance, that the court decreed the plaintiff should accept as an alternative to granting a new trial.

In so doing, the court admittedly substituted its judgment for that of the jury. In this we do not think it was justified. The evidence was that the plaintiff was a man thirty-four

years of age, who depended on his back in making his living, and that his activities in this regard had been seriously curtailed as a result of the accident. Doctors who testified for the defendant, as well as those who testified for the plaintiff, recognized that his injuries were real, that they were attributable to the accident, and that no complete cure could be guaranteed. The defendant's medical witnesses, who did not think that surgical assessment was necessary at the time they examined the plaintiff, nevertheless thought that conservative treatment, involving hospitalization and an extended period of therapy (one of them said for at least six months) would be necessary, and both acknowledged that this might not effect a cure and that surgery might be necessary in the future.

Dr. O'Neil, the plaintiff's attending physician, said that there was only a seventy-five per cent chance that a laminectomy and fusion would be successful, and said further that the plaintiff would be partially disabled thereafter in that he would have permanent back stiffness. He also said,

". . . in the long forecast of a case of this type these people ten, fifteen, twenty years after surgery do have, many of them, continuing troubles above the fusion level."

These were all matters which the jury was entitled to consider in reaching its verdict.

Dr. O'Neil advised the plaintiff, in July 1958, that, since he was not responding to conservative treatment, surgical assessment was in order. However, he further advised him to continue with his regular routine and to report any severe attacks of pain which were not alleviated by home treatment. On August 27, 1958, the doctor again advised the plaintiff to continue with his home treatments until arrangements for a surgical assessment could be made. The plaintiff was later advised that this could be done at the Providence Hospital in January 1959. This "assessment" was a test, called a myelogram, the purpose of which was to determine whether surgery probably would be helpful. Since such a test was never made, the jury could not be certain whether surgery would have been in order, but it was justified in accepting the opinion of Dr. O'Neil and

his consultant that the test probably would have indicated the advisability of surgery. Since the plaintiff was not advised to go to the hospital for this assessment before January 1959, the trial court's finding that the maximum benefits from medical care could be obtained six months after September 10, 1958, was in error. If the assessment (which the plaintiff refused) had been performed January 15, say, and the surgery a week later (there was evidence from which the jury could infer that some time should be allowed for determining the results of the test and allowing the patient to recover from the effects of it), the jury was entitled to find that the maximum benefits from medical care could not have been obtained until July 22, 1959. This would mean a total of 652 days for which the plaintiff was entitled to maintenance (assuming, of course, that the jury found that the plaintiff used reasonable diligence in obtaining treatment, and the evidence, as we view it, would support such a finding), or $4,916, less the $240 which had already been paid. This is $1,388 more than the trial court determined to be the maximum award and only $1,244 less than the jury awarded.

By the same reasoning, the trial court underestimated the maximum amount of lost earnings to which the plaintiff was entitled. Also, the memorandum opinion shows that it did not give due consideration to the evidence which indicated that the plaintiff would always suffer some disability and that this disability might be great, in fact that it was possible neither surgery nor conservative treatment would give him relief. There was also the medical testimony that even though the plaintiff underwent major surgery, there remained a possibility that he would have continuing back troubles in later years, as many persons suffering from his type of disability do develop such troubles. In this regard, it is to be noted that the jury was entitled to find that, in the exercise of reasonable care, the plaintiff was not required to undergo this serious and uncertain operation. *Howard v. Gulf, Mobile & Ohio R. Co.*, 13 Ill. App. (2d) 482, 142 N. E. (2d) 825; *Thompson v.*

*Quarles,* (Tex. Civ. App.) 297 S. W. (2d) 321; and see Annotation, 48 A. L. R. (2d) 346.

■ We cannot agree, therefore, that the verdict was as excessive as the trial court found it to be. On the other hand, we cannot disregard the fact that the trial court had the witnesses before it and was in a position to make evaluations that cannot be made in this court. Among the facts to which the court undoubtedly attached considerable importance was the plaintiff's reluctance to enter a hospital and submit to surgery. We think that, inasmuch as our review of the evidence has disclosed factors which the trial court evidently overlooked, the amount which the plaintiff is required to accept in lieu of a new trial should be raised, but due regard for the discretion of the trial court prevents the reinstating of the verdict. It is our opinion that a reduction of the verdict in the amount of $10,000 would be fair and just to both parties. If the plaintiff does not accept a verdict in the sum of $30,234 within ten days after the remittitur goes down, a new trial shall be granted.

The plaintiff asks for a new trial, limited to the question of his right to recover his medical expenses, claiming that it was for the jury to decide whether adequate free care was available and had been refused. But we think the evidence is overwhelmingly in favor of that conclusion, and that the court correctly instructed the jury on this point.

■ The defendant also contends that it should have a new trial on the ground of newly discovered evidence that the plaintiff had been convicted of a crime and had allegedly misrepresented the truth about this on his deposition. This evidence, if presented on a new trial, would merely tend to impeach the credibility of the plaintiff. Such evidence does not afford a sufficient ground for the granting of a new trial. *Nelson v. Placanica,* 33 Wn. (2d) 523, 206 P. (2d) 296; *Hahn v. Brickell,* 140 Wash. 412, 249 Pac. 780.

The judgment is reversed in part and the cause is remanded for further proceedings consistent with this opinion. Neither party shall recover costs on this appeal.

FINLEY, C. J., HILL, WEAVER, and OTT, JJ., concur.