[No. 38458.     Department One.     January 5, 1967.]

JOSEPH COX, JR., *Respondent,* v. CHARLES WRIGHT ACADEMY, INC., *et al., Appellants.\**

*Bateman, Reed, McClure & Moceri,* by *Thomas W. Huber,* for appellants.

*\*Reported in 422 P.2d 515.

*Burkey, Marsico & Rovai,* by *Robert L. Rovai,* for respondent.

HALE, J.—Had Joseph Cox, Jr., plaintiff, not been involved in four automobile accidents within a period of four years, the nature and extent of his injuries from the accident of May 14, 1964, would have been easier for the jury and court to ascertain. Believing that the jury had awarded special damages only and ignored general damages for pain and suffering, the trial court granted additur of $2,000 to the $340 verdict as an alternative to a new trial and defendants appeal.

Plaintiff, a young man 21 years of age, was seated behind the steering wheel of his 1957 DeSoto automobile parked on North 27th and Warner streets in Tacoma, May 14, 1964. The Charles Wright Academy school bus, proceeding north on Warner, struck the car on the left rear bumper and fender. Evidence described the impact as varying in force from slight and scraping to that of a sharp, direct blow sufficient to move the parked car several feet forward. Plaintiff testified that the impact, coming as it did unexpectedly, immediately produced muscle spasm, soreness and pain in his back, and that he went to his doctor the next day for examination and treatment of injuries caused by the collision.

Injuries from two prior accidents, each requiring medical care, tended to obscure plaintiff's damages. On August 3, 1960, plaintiff injured his back when an automobile in which he was a passenger left the road. He saw his doctor two or three times. X rays, taken at his doctor's order, showed no bone injuries. Thereafter, plaintiff took chiropractic treatment once or twice a month for about a year following that accident. He engaged in vigorous physical activities following the accident, including weight lifting, pitching baseball, and heavy manual labor.

November 10, 1963, while seated in a parked car, he suffered severe injuries in a second accident when the car was struck violently from the rear by another automobile. Force of the impact drove his car forward 50 or 60 feet up

over a sidewalk into a telephone pole. The accident sent plaintiff to the hospital for 10 days, during which time his doctor kept him in traction for 7 days. His doctor ordered him to discontinue playing baseball and to play no golf or other sports, instructions still in force when the present accident occurred May 14, 1964.

Treatment for injuries of the November 10, 1963, accident included wearing a Taylor brace which was replaced later by a lumbo-sacral belt, daily physical therapy for 2 months reduced to 3 times weekly thereafter but continuing to the third and present accident, and intermittent visits to the doctor. Six days before the instant accident of May 14th, plaintiff last visited his doctor for treatment of injuries from the November 10, 1963, accident. His treating physician testified by deposition that the November 10th accident had left plaintiff permanently partially disabled and the doctor, on plaintiff's behalf, January 13, 1964, reported to the Selective Service System that plaintiff would have chronic back problems for the remainder of his life.

These facts, combined with other evidence, enabled the jury to find that on May 14, 1964, the date of the instant accident, plaintiff was still suffering from and under medical treatment to a marked degree for injuries incurred in the November 10, 1963, accident, and to some extent from the first accident.

Before trial of the issues arising from the present accident, plaintiff suffered further injuries in a rear-end collision on August 10, 1964, which, although described by plaintiff as a "light tap," induced the doctor to prescribe back braces, a cervical collar and medication for pain and muscle spasm—all attributable by the doctor to aggravation of earlier injuries.

The jury in the present case returned a verdict for plaintiff in the sum of $340 and plaintiff moved to increase it or, in the alternative, for a new trial on eight grounds including misconduct of the jury, passion and prejudice, want of substantial justice, and unjustified verdict contrary to law. The trial judge, concluding from the record that the

jury had returned a verdict for out-of-pocket medical expenses only and had thus failed to allow any general damages for pain and suffering attributable to the May 14, 1964, accident, granted additur of $2,000 to the $340 verdict and ordered a new trial on the issue of damages only should either party reject the increase. Plaintiff accepted the additur, and defendants, refusing it, bring this appeal from the order directing a new trial, asking that the jury verdict be reinstated and judgment entered thereon.

Plaintiff supported his motion for an increase of the verdict with an affidavit of one of the jurors that "the verdict was arrived at by merely adding medical bills submitted by the plaintiff from Miriam Engelland, Physical Therapist, and Dr. Arnold. That the jury awarded payment of these expenses only from the 15th day of May, 1964 to August 10, 1964." From this affidavit and the record, plaintiff argues that the jury awarded only out-of-pocket medical expenses for physical therapy and doctor's treatment between the dates of May 14, 1964, the date of the third accident, and August 10, 1964, the date of plaintiff's fourth accident.

■ Except in cases which fall peculiarly within equitable jurisdiction, or where remedies and defenses are made available by statute without a jury, the right of trial by jury shall be inviolate. Const. art. 1, § 21. Accordingly, the law gives a strong presumption of adequacy to the verdict. RCW 4.76.030; *Martin v. Foss Launch & Tug Co.*, 59 Wn.2d 302, 367 P.2d 981 (1962); *Worthington v. Caldwell,* 65 Wn.2d 269, 396 P.2d 797 (1964). Regardless of the court's assessment of the damages, it may not, after a fair trial, substitute its conclusions for that of the jury on the amount of damages. *Tolli v. School Dist. No. 267 of Whitman Cy.,* 66 Wn.2d 494, 403 P.2d 356 (1965). When the evidence concerning injuries is conflicting, the jury decides whether the injuries are insignificant, minor, moderate, or serious, and it determines the amount of damages. Aside from the requirement that there be substantial evidence to support the verdict, the jury is the final arbiter of the effect of the evidence, for it determines the credibility of the witnesses, the weight of their testimony, and the consequence of all

other evidence. *Scanlan v. Smith,* 66 Wn.2d 601, 404 P.2d 776 (1965); *Richards v. Sicks' Rainier Brewing Co.,* 64 Wn.2d 357, 391 P.2d 960, 2 A.L.R.3d 430 (1964); *Pritchett v. Seattle,* 53 Wn.2d 521, 335 P.2d 31 (1959); *McUne v. Fuqua,* 45 Wn.2d 650, 277 P.2d 324 (1954).

■ Other than the amount of the verdict, the record in this case discloses no basis to suggest that the jury was prejudiced against plaintiff or incited by passion to regard his cause unfairly. True, plaintiff's counsel made an affidavit that, in his telephonic conversations with jurors to ascertain why their verdict had been so low, one juror had told him that young people of today are unworthy of belief because they are not of good moral character. But, the affidavit of counsel, hearsay in character as it was, cannot be allowed to impeach the verdict of a jury, for impeachment by such means would inevitably place nearly every verdict in jeopardy and promote great uncertainty in the judicial process. *Casey v. Williams,* 47 Wn.2d 255, 287 P.2d 343 (1955).

■ To sustain the additur and the new trial, plaintiff must establish one explicit premise. He must demonstrate unerringly from the record that the verdict of the jury represented exactly special damages only, with no allowance whatever for pain, suffering, and other general damages. Where the record shows categorically that special damages alone were awarded with no allowance for proved general damages, the additur and a new trial may lie. *Shaw v. Browning,* 59 Wn.2d 133, 367 P.2d 17 (1961).

But we have no such clear-cut picture here as we had in *Shaw, supra.* In that case, there being no dispute as to the precise amount of the special damages and clear and undeniable proof of general damages, including a broken tooth, lacerations, contusions and the wearing of a knee cast under doctor's prescription, all attributable directly to the accident, we held that the verdict of the jury in the exact amount of special damages only established that the jury had ignored and made no award for general damages. Accordingly, we sustained the order granting a new trial.

In the present case, however, plaintiff was under medical care and therapy at the time of the accident—care which had been scheduled for the future as well. His injuries resulting from the accident produced the same symptoms as those persisting from the November 10, 1963, accident. Plaintiff's exhibits Nos. 1 and 7, statements for professional services from Dr. Arnold and Miriam Engelland, physical therapist, totaled $543.50 for the period between May 15, 1964, and April 20, 1965. Although, if one extracts from the doctor's and physical therapist's bills those items for treatments given plaintiff between May 14th, the instant accident, and August 10th, his fourth accident, they will total the $340 verdict, this computation does not preclude a conclusion that the jury attributed only a few therapy treatments and doctor's visits to the present accident and awarded the remainder for general damages. It was within the jury's province to decide whether and how seriously plaintiff was injured from the May 14th impact.

The record thus permits a conclusion that the jury found that plaintiff's injuries from his August, 1960, and November, 1963, accidents persisted and continued on through his May 14, 1964, accident; that he suffered permanent injuries from the November 10, 1963, accident; that his injuries from the May 14, 1964, accident were slight and minimal; and that the medical expenses following the May 14, 1964, accident were largely in one degree or another attributable to the accident of November, 1963, and in some degree to the first accident. By the time the case came on for trial, the jury could find that the fourth accident, the one in August, 1964, caused new, or aggravation of old, injuries, tending to obscure or cloud all the evidence of damages. The jury, in view of its duty to resolve all conflicts in the evidence, judge the credibility of the witnesses and give whatever weight to the evidence it deemed just under all the circumstances, had the power to return a $340 verdict.

In similar cases, we have allowed additur for failure to award general damages only where there has been no conflict as to the quantum of special damages, and the special damages can be computed from the record with certainty.

See *Shaw v. Browning, supra,* where the verdict expressed the exact amount of the special damages. But where, as here, the special damages are subject to controversy and their computation uncertain, we have disallowed additur and a new trial and reinstated the verdict of the jury (*Worthington v. Caldwell, supra*) even though the special damages are substantial and the verdict only slightly greater than the special damages. *Richards v. Sicks' Rainier Brewing Co.,* 64 Wn.2d 357, 391 P.2d 960 (1964); *Durkan v. Leicester,* 62 Wn.2d 77, 381 P.2d 127 (1963); *Lipshay v. Barr,* 54 Wn.2d 257, 339 P. 2d 471 (1959).

One additional point merits discussion. Defendants object to the trial court considering a juror's affidavit which stated:

[T]he verdict was arrived at by merely adding medical bills submitted by the plaintiff from Miriam Engelland, Physical Therapist, and Dr. Arnold. That the jury awarded payment of these expenses only from the 15th day of May, 1964 to August 10, 1964. Your affiant further states that it was the jury's feeling that the plaintiff herein, Joseph Cox, has in fact received some injury as a result of the May 14th accident.

Defendants contend that such an affidavit is inadmissible to impeach the jury verdict. We think the position well taken.

■ Our judicial system rests upon the idea of finality in judgments given by the courts. Lacking the principle that every action will one day terminate in a final adjudication, subject no longer to re-examination, the judicial system would likely disappear. For that reason and other good reasons, the courts have long accepted the premise that jurors may not impeach their own verdict. *Smith v. American Mail Line, Ltd.,* 58 Wn.2d 361, 363 P.2d 133 (1961)—a salutary principle contributing greatly to the finality of judgments and stability of the courts.

Thus, courts may consider only such facts asserted in the affidavits of jurors which relate to the claimed misconduct of the jury and do not inhere in the verdict itself. The mental processes by which individual jurors reached their

respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore, inhere in the verdict itself, and averments concerning them are inadmissible to impeach the verdict. *Purdy v. Sherman,* 74 Wash. 309, 133 Pac. 440 (1913); *Taylor v. Kitsap Cy. Transp. Co.,* 158 Wash. 404, 290 Pac. 996 (1930); *Kelly v. Carroll,* 36 Wn.2d 482, 219 P.2d 79, 19 A.L.R.2d 1174 (1950); *Russell v. Grandview,* 39 Wn.2d 551, 236 P.2d 1061 (1951); *Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962); *Coleman v. George,* 62 Wn.2d 840, 384 P.2d 871 (1963).

A different rule, one permitting jurors to impugn the verdicts which they have returned by asserting matters derogatory to the mental processes, motivations and purposes of other jurors or purporting to explain how and why a juror voted as he did in arriving at his verdict, would inevitably open nearly all verdicts to attack by the losing party and thwart the courts in achieving a long held and cherished ambition, the rendering of final and definitive judgments.

Judgment reversed with directions to enter judgment upon the verdict of the jury.

Rosellini, C. J., Hill and Ott, JJ., and Langenbach, J. Pro Tem., concur.