[No. 41790.    En Banc.    November 18, 1971.]

EMBERT JAMES, *Petitioner,* v. BEN J. ROBECK *et al., Respondents.*

*Curtis, Fisher & Butler* and *Robert L. Butler,* for petitioner.

*Julian C. Dewell* (of *Anderson, Hunter, Carlson & Dewell*), for respondents.

HALE, J.—As an alternative to a new trial, the court reduced a personal injury verdict from $17,000 to $7,500. Plaintiff appealed and the Court of Appeals affirmed. 3 Wn. App. 108, 472 P.2d 635 (1970). This court granted review (78 Wn.2d 992 (1970)), and we reverse to reinstate the verdict.

Embert James, plaintiff, was driving a Volkswagen automobile—a light, compact car—west on Post Road in Snohomish County when defendant drove his 1965 Plymouth car through a stop sign at the Post and Emander Roads intersection, striking plaintiff's car on the right side near the rear. From the evidence, the jury could have found that defendant Robeck neither heeded the stop sign nor slowed down before ramming plaintiff's car. Defendant did not testify in the case.

Plaintiff's testimony was uncontradicted that, a moment before impact, he swerved his car to the left; and that defendant's car struck the Volkswagen on the right side, putting it into three or four spins, forcing it off the road down a 30-foot embankment, and into a collision with what he described as "a great, big tree." Issues of contributory negligence, proximate cause and negligence submitted by instruction were resolved by the jury in favor of the plaintiff, and it returned a verdict of $17,000. As the Court of Appeals stated, 3 Wn. App. 108, the only issue on appeal is whether the record supports the order reducing the verdict to $7,500. We think it does not.

In reducing the verdict as the alternative to granting a new trial, the learned trial judge concluded that the verdict was so great as to shock the court's conscience; was unsupported by the evidence; had been induced by passion and prejudice; and that substantial justice had not been done. In the court's opinion, the evidence of damages was insuffi-

cient to warrant a verdict of $17,000, and the court concluded that the verdict had, therefore, been based on something other than the evidence. In entering the alternative order for a new trial or reduction of the verdict, the court referred to counsel's conduct in continually referring to plaintiff's wage loss which had not been proved and to counsel's comments in the presence of the jury that, even though he could not understand the court's rulings, he would abide by them. The court referred also to counsel's mention of welfare payments, and the possibility of surgery after the court had ruled out reference to these items. The court then concluded that these statements and comments made by plaintiff's counsel during trial were the incidents from which passion and prejudice could be in part inferred, and when taken in conjunction with the size of the verdict and the court's estimate of its excessive size established that the verdict had been induced by passion and prejudice. Without further specification or detail, the court stated that its conclusions of passion and prejudice were in part established, too, by means of its appraisal of the effect these incidents had on the jury as shown through "the demeanor of the jury by the court's visual observances."

What it was that the court saw in the faces of the jurors or their demeanor to signify passion and prejudice for or against either party or the court is not delineated. Nor is there evidence in the record of either untoward or inflammatory or hyperdramatic events of such cogency and force as to be unamenable to curative instructions or admonitions, or of a kind and nature which, from their very occurrence, must be said as a matter of law to produce passion and prejudice because of their undeniable impact to induce the jury to violate its oath to deliver a true verdict upon the evidence alone. *See James v. Robeck,* 3 Wn. App. 108, 109, 472 P.2d 635 (1970).

Our first inquiry is whether the record sustains a verdict of $17,000, for if there is not substantial evidence to support the verdict, the issue of excessive damages becomes moot and ought not stand at all. At the outset, there was proof of

an impact of sufficient force and momentum to demolish the light car that plaintiff was driving and to impel it off the road and down an embankment into a sharp collision with a tree. There was evidence of facial cuts, pain and discomfort when plaintiff described his condition to the jury. He was, he said, 25 years old and a commercial fisherman. He said that, although he could still handle a boat, the persistent pain in his lower back after the accident prevented him from doing the heavy work of a commercial fisherman, and that he had to take pain pills twice a day. He had tried to work as a carpenter, he said, but the work proved too arduous for him to handle. He had tried longshoring, also, but that had turned out to be too heavy for him, too.

An orthopedic specialist, Dr. Paul H. White, testified that plaintiff did not have a normal back before the accident, that it had an extra segment of bone at the end of the lumbar spine; that trauma to that area produced a greater strain on his back than it would on a normal spine, and that, although plaintiff's back abnormality had not prevented its normal function before the accident, the injury superimposed upon a congenital abnormality produced a chronic lumbar strain which would intermittently limit plaintiff's physical activities. The doctor found that $2\frac{1}{2}$ years after the collision plaintiff was experiencing back pains and physical limitations causally connected to the automobile collision of November 27, 1966.

Another physician, Dr. John B. Kennedy, testified that plaintiff suffered an appreciable disability because of his injury in his lower back area. A neurologist who had examined the plaintiff at the instance of the defense testified that the accident had caused a low back strain and that the injury continued to cause the plaintiff some pain and disability at the time of trial. He said he could not predict when all symptoms due to the accident would disappear, but that eventually plaintiff would be cured. Other witnesses testified that, after the accident, plaintiff appeared to have lost considerable athletic ability and capability for the

kind of heavy work they had seen him perform before the accident.

Plaintiff acknowledged that, in Alaska during the summer following the accident, he won the 3.6 mile marathon foot race up Deer Mountain in 62 minutes against a field of 32 contestants and, too, that he had played basketball and volleyball regularly after the accident. None of the doctors testified that there would be a permanent disability or even that the injury was permanent, but each agreed that the accident had caused to plaintiff's low back a strain or sprain superimposed upon a minor congenital abnormality of the lumbosacral region. They agreed, too, that the sprain or strain, while not permanent, would persist for an unknown period. Plaintiff was in the hospital for only an hour after the accident while glass was removed from his forehead. His total special damages proved for medical care and eyeglasses came to $193.41.

This very brief summary of the evidence concerning the pain, discomfort and physical limitations, their duration and degree, upon the plaintiff's physical activities shows that there was substantial evidence to support the verdict, and that the jury remained within its constitutional bounds as a trier of the facts in finding damages in the amount of $17,000, and that the verdict, therefore, was not intrinsically so excessive as to unmistakably indicate that the award was the result of passion and prejudice. CR 59(a); RCW 4.76.030.

That the verdict must be accorded a strong presumption of validity is seen in the statutory proviso that, when reviewing an increase or reduction in the verdict,

> there shall be a presumption that the amount of damages awarded by the verdict of the jury was correct and such amount shall prevail, unless the supreme court shall find from the record that the damages awarded in such verdict by the jury were so excessive or so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice.

RCW 4.76.030.

It was, perhaps, the short hospital stay or the compara-

tively modest medical expenses or the winning of a tough foot race or the frequent participation in sports and games after the accident that caused the trial court, in passing upon defendant's motion for a new trial, to express its shock at the size of the verdict and conclude that the $17,000 award unmistakably showed that the jury in returning it had been moved by passion and prejudice. In addition to the question of passion and prejudice as a ground for the alternative new trial order, the court concluded, too, that substantial justice was not done and that there had been misconduct on the part of the plaintiff's attorney which, in combination, the court held warranted either a new trial or a reduction of the award.

Whether substantial justice was done depends in a large degree on whether the verdict was so excessive or inadequate as unmistakably to indicate passion and prejudice. When we examine the items of damages upon which evidence had been adduced, including the persistent pain, discomfort and physical limitations persisting for so long a time and likely to continue for an appreciable period into the future and which the jury could find had been caused by the accident, we are unable to find that quality of certainty which makes the $17,000 verdict, because of its size, one unmistakably motivated by passion and prejudice. The $17,000 verdict, we conclude, was supported by the evidence even without proof of loss of income or permanent partial disability attributable to the accident and within the province of the jury to return. Const. art. 1, § 21; CR 38(a).

If the evidence supports the verdict and the trial has been conducted without error of sufficient gravity to warrant a reversal, the trial court cannot substitute its views of damages for those of the jury. To the jury is consigned under the constitution the ultimate power to weigh the evidence and determine the facts—and the amount of damages in a particular case is an ultimate fact. This court has, we think, consistently followed this principle. *Coleman v. George,* 62 Wn.2d 840, 384 P.2d 871 (1963), reinstating an $8,520 verdict held excessive; *Cox v. Charles Wright Acad-*

*emy, Inc.*, 70 Wn.2d 173, 422 P.2d 515 (1967), reinstating a $340 verdict held inadequate by the trial court which had granted additional $2,000; *Lyster v. Metzger*, 68 Wn.2d 216, 412 P.2d 340 (1966), reinstating a $35,000 verdict which the trial court had deemed excessive. *Accord: Tolli v. School Dist. 267*, 66 Wn.2d 494, 403 P.2d 356 (1965).

Among our cases sustaining a reduction in the verdict as an alternative to a new trial are *Apling v. Cascade Oil Co.*, 60 Wn.2d 505, 374 P.2d 575 (1962), reducing a general verdict from $35,000 to $7,500, and increased by this court to $10,000; *Martin v. Foss Launch & Tug Co.*, 59 Wn.2d 302, 367 P.2d 981 (1962), where the trial court reduced a $40,234 verdict to $11,028, and this court partly reinstated the verdict to allow $30,234; *Malstrom v. Kalland*, 62 Wn.2d 732, 384 P.2d 613 (1963), in which the trial court sustained a verdict of $50,000, and this court remanded to reduce it to $35,000; and *Gray v. Wilson*, 34 Wn.2d 524, 208 P.2d 1171 (1949), where the trial court refused to reduce a $12,000 verdict to $4,170 and this court ordered a reduction; and *see, also, Scobba v. Seattle*, 31 Wn.2d 685, 198 P.2d 805 (1948).

Whatever may be the distinguishing features which separate these two lines of cases, it is our opinion that the rule now and for some time prevailing in this jurisdiction requires that the passion and prejudice be of such manifest clarity as to make it unmistakable. To synthesize what may seem to be a disparity, when the trial court is called to rule upon questions of excessive or inadequate verdict as distinguished from the question of granting or denying a new trial outright, we think the court should first look to the scope or range of the evidence in relation to the verdict. In those instances where the verdict is reasonably within the range of proven damages, whether conflicting, disputed or not, and where it can be said that the jury, in exercising its exclusive power, could believe or disbelieve some of it and weigh all of it and remain within the range of the evidence in returning the challenged verdict, then it cannot be found as a matter of law that the verdict was unmistakably so

excessive or inadequate as to show that the jury had been motivated by passion or prejudice solely because of the amount.

█ . As to the other factors from which the idea of passion and prejudice may be derived, sometimes there may occur during the trial untoward incidents of such extreme and inflammatory nature that the court's admonitions and instructions could not cure or neutralize them. These incidents, when viewed in conjunction with a verdict which appears to be excessive or inadequate may give some clue to the issue of passion or prejudice. But we find no record of such untoward incidents in this case. Those alluded to by the trial court, we think, amounted to no more than the standard and routine rulings made by the court in passing upon the admissibility of evidence, offers of proof, and objections to the argument of counsel—no one of which or in combination could be said as a matter of law to be incurable or of such magnitude as to warrant a new trial.

We are thus of the opinion that the verdict of $17,000 was substantially supported by and reasonably within the range of the evidence of damages; that it was not, therefore, as a matter of law, so excessive in size as to show unmistakably that it was based on passion and prejudice; and that the record shows no untoward incidents or events occurring during the trial of such an inflammatory or dramatic character and of such extreme nature of which it must be said as a matter of law they could not have been cured or neutralized by the court's admonitions and instructions.

Accordingly, the verdict of the jury will be reinstated. The alternative order for a new trial is reversed and the case remanded to the superior court for entry of judgment upon the verdict.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, and WRIGHT, JJ., and RYAN, J. Pro Tem., concur.

NEILL, J. (dissenting)—I am in agreement with the decision and opinion of the Court of Appeals. *James v. Robeck,*

3 Wn. App. 108, 472 P.2d 635 (1970). The trial court alone was in a position to observe the effect on the jury of incidents during trial. He adequately stated his observations and reasons for his order. In such circumstances, appellate courts should require no more.

STAFFORD, J., concurs with NEILL, J.