[No. 6885–7–I.   Division One.   May 5, 1980.]

CRAIG A. COOPERSTEIN, ET AL, *Respondents,* v. WILLIAM
J. VAN NATTER, *Appellant.*

LAKE WASHINGTON BUILDERS, *Plaintiff,* v. CRAIG A.
COOPERSTEIN, ET AL, *Respondents,* WILLIAM J.
VAN NATTER, ET AL, *Appellants.*

*Camden M. Hall* and *Foster, Pepper & Riviera* (counsel for appeal only) and *William J. Van Natter,* pro se.

*William M. Robinson,* for respondents.

SWANSON, J.—William J. Van Natter and wife appeal from portions of a judgment entered on a jury verdict awarding Craig A. Cooperstein and Thomas P. Dickinson and their wives $15,800 in damages for breach of contract. Cooperstein and Dickinson cross–appeal from that part of the judgment setting aside an $8,000 verdict for defamation against Van Natter. At the heart of the dispute is a contention that defendant Van Natter, vendor of an apartment house building under a real estate contract, wrongfully refused to endorse over to plaintiffs Cooperstein and Dickinson (Cooperstein), assignees of the vendee, a check representing proceeds covering fire damage to the building.

The facts pertinent to the issues raised are as follows: On September 4, 1976, fire broke out in the apartment building

causing damage to five units, several bathrooms and the ground floor cafe. Cooperstein was required by the terms of the real estate contract to provide fire insurance, and a $20,000 policy was in force. The real estate contract further provided:

> In case of damage or destruction from a peril insured against, the proceeds of such insurance remaining after payment of the reasonable expense of procuring the same shall be devoted to the restoration or rebuilding of such improvements within a reasonable time, *unless purchaser elects that said proceeds shall be paid to the seller for application on the purchase price herein.*

(Italics ours.)

Cooperstein elected to repair the building and so informed Van Natter. Van Natter responded that he wanted the proceeds applied to the balance owing on the contract. Cooperstein meanwhile received bids for the repair work and on October 12, 1976, signed a contract with William Harnecker to repair the fire damage and otherwise bring the building into compliance with housing code provisions. The agreed price was $18,000, a third payable in advance. The repair contract was expressly contingent upon Van Natter's making the insurance proceeds available.

Van Natter objected to payment in advance. He refused to release the funds, and Harnecker was unable to begin work. Following demand by Cooperstein's counsel, Van Natter agreed by letter to release the funds after completion of the repairs. However, no provision was made for the necessary advance payment, so Cooperstein borrowed $8,000, of which $5,000 was paid to Harnecker. Upon completion of the repairs counsel for Cooperstein forwarded to Van Natter documentation that the work had been done and requested that the check be endorsed to Cooperstein. Van Natter, however, refused to endorse the draft. Cooperstein sold the building to pay the $8,000 note and other debts. He filed suit against Van Natter on March 8, 1977. Harnecker subsequently brought suit against Cooperstein, et al, and Van Natter to foreclose his lien for the repair

work, and the two actions were later consolidated for trial. On May 5, 1977, Van Natter filed an answer to the lien foreclosure action in which he counterclaimed against Harnecker and cross–claimed against Cooperstein for abuse of process. Van Natter alleged

> That the Defendants Cooperstein and Dickinson and the Plaintiff Harnecker have jointly and severally engaged in a number of instances of use of legal process for an ulterior purpose, to force the Defendant Van Natter to relinquish control of the above–described insurance company draft in order to further a *kick–back scheme* between the Plaintiff Harnecker and the Defendants Cooperstein and Dickinson, wherein the Plaintiff Harnecker allegedly was to perform the repairs to the Leary Apartments for $18,000.00, but in fact, has agreed to perform them for $15,000.00 to rebate to the Defendants Cooperstein and Dickinson the sum of $3,000.00,
> . . .

(Italics ours.)

Cooperstein cross–claimed for defamation based on Van Natter's kickback allegation. On a motion for summary judgment the lien foreclosure action against Van Natter was dismissed. Cooperstein then accepted Van Natter's offer to deposit the proceeds with the court; Harnecker was paid, and the lien foreclosure action against Cooperstein, et al, was dismissed.

The remaining cross claims and the original action for breach of contract went to trial on December 6, 1977. The jury returned verdicts against Van Natter of $15,800 on the contract claim and $8,000 on the defamation claim. The court, however, granted Van Natter's motion for judgment n.o.v. on the defamation claim. Van Natter appeals from the judgment in the breach of contract action, and Cooperstein, et al, cross–appeal from the judgment n.o.v. on the defamation claim.

We initially observe that these actions, begun as relatively straightforward actions for breach of contract and lien foreclosure, escalated with the filing of cross claims, counterclaims, motions for dismissal, and a multitude of

pretrial orders involving several trial judges. Consequently, a case that was estimated to take a day and a half to try resulted in an 8–day trial, and we now have for our consideration a verbatim report of proceedings totaling more than 1,000 pages, 400 pages of clerk's papers, 80 documentary exhibits, and 180 pages of appellants' briefs containing 53 assignments of error.[1] We now undertake to unravel this procedurally complicated case.

■ We address the defamation issue first. The fundamental legal rules are neither complex nor in substantial dispute and may be stated as follows:

> Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief. *McClure v. Stretch,* 20 Wn.2d 460, 147 P.2d 935 (1944); *Johnston v. Schlarb,* 7 Wn.2d 528, 110 P.2d 190, 134 A.L.R. 474 (1941).

*Gold Seal Chinchillas, Inc. v. State,* 69 Wn.2d 828, 830, 420 P.2d 698 (1966).

Or, as put more broadly in *Johnston v. Schlarb,* 7 Wn.2d 528, 110 P.2d 190, 134 A.L.R. 474 (1941), the issue is not whether the allegations complained of meet a test of legal relevancy but whether "they have '*some relation*' to the judicial proceedings in which they were used and have '*any bearing upon the subject matter of the litigation.*'" *Johnston v. Schlarb,* at 540.[2]

---

[1]The trial judge, at one point, was moved to remark, "I don't think I have ever had a trial like this in my experience, not as a lawyer and a judge. . . . I don't see how anybody can come out on it financially unless the plaintiff gets a monumental damage verdict for slander. That's the only way you can come out of it the way I see it. It's the old example of lawyers killing each other off and I have seen it happen."

[2]We note that the defamation issue was submitted to the jury, and in answer to interrogatories the jury found that the kickback allegation was not relevant. Cooperstein suggests that we are bound by that determination. However, in the context of absolute privilege the issue of relevancy or pertinency is never left to the jury but is a question of law for the court. 50 Am. Jur. 2d *Libel & Slander*

Thus, the determinative question is whether Van Natter's kickback allegation had some relation to or any bearing upon the relief sought. The parties disagree on what was the relief sought. Cooperstein argues the kickback allegation had no relevance to the lien foreclosure action. Van Natter contends the allegation was made in the context of a counterclaim for abuse of process and was thus relevant to the relief sought.

Was Van Natter's kickback claim relevant as a matter of law to his counterclaim for abuse of process? That is the critical issue. Van Natter's contention was that the lien foreclosure action was an abuse of process filed as part of the alleged kickback scheme between Harnecker, the builder, and Cooperstein and Dickinson. We need not decide whether the allegation of an illegal kickback scheme was legally sufficient, standing alone, to entitle Van Natter to relief for abuse of process. What is dispositive is that the kickback allegation bore an obvious relation to Van Natter's claim for abuse of process, it being the backbone of his cross claim and counterclaim.

A further indication of the materiality or relevancy of the kickback allegation is found in Judge Goodloe's pretrial order of September 7, 1977, which directed Cooperstein to answer questions regarding the manner in which the $3,000 alleged to have been "kicked back" was applied to repairs to the apartment building.

Because the allegation of a kickback scheme was relevant to the relief sought, it was absolutely privileged, and the trial court was correct in granting Van Natter's motion for judgment n.o.v. on the defamation claim. Cooperstein argues that the trial court's reliance on *Moore v. Smith,* 89

§ 239 (1970). Cooperstein also argues that because Van Natter expressly demanded a jury trial on all issues he is estopped from arguing that it was error to submit the defamation issue to the jury. We disagree. Van Natter made at least two motions to dismiss the defamation claim and excepted to all the instructions given regarding defamation. He is thus not precluded from arguing on appeal that the trial court should have determined as a matter of law that the kickback allegation was absolutely privileged.

Wn.2d 932, 578 P.2d 26 (1978), as authority for granting the judgment n.o.v. was misplaced. That case involved defamatory matter in a letter of complaint filed with the Tacoma–Pierce County Bar Association. The issue presented was whether the absolute privilege as is afforded statements made in judicial proceedings should be extended to protect communications to a local, voluntary bar association. The court's conclusion was that it should not because the bar association had neither the power to discipline the speaker nor to strike the statement from the record. Cooperstein argues that insofar as the issue in *Moore v. Smith* was whether the absolute privilege should be *extended,* it did not change prior case law requiring the statement in question to be relevant or pertinent to the proceeding, litigation, or relief sought. We think Cooperstein's interpretation is correct; the court in *Moore* was able to conclude the absolute privilege was inapplicable without reaching the issue of relevancy. But there is no claim here that the trial court lacked the authority to strike a defamatory statement or to discipline the person making it. Further, as we have shown, the kickback allegation satisfied the relevancy requirement. The trial court properly granted Van Natter's motion for judgment n.o.v. even if incorrect in its reliance on *Moore.*

Van Natter makes several arguments on appeal relating to the jury's award of damages in favor of Cooperstein on the breach of contract action and the court's instructions regarding damages.

First, Van Natter claims a new trial should have been granted under the authority of CR 59(a)(5).[3] He argues

---

[3]CR 59(a)(5) states in pertinent part,

"(a) . . . The verdict or other decision may be vacated and a new trial granted to all or any of the parties and on all or part of the issues when such issues are clearly and fairly separable and distinct, on the motion of the party aggrieved for any one of the following causes materially affecting the substantial rights of such parties:

". . .

"(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;"

that the amount awarded, $15,800, so far exceeds the amount of special damages proved by Cooperstein, $12,358, as to indicate that the verdict itself was the result of passion or prejudice.

██ We disagree. The amount of damages is within the range of the evidence, and we cannot say, based solely on the amount awarded, that the jury was motivated by passion or prejudice. *James v. Robeck,* 79 Wn.2d 864, 490 P.2d 878 (1971).

Van Natter, however, suggests that events at trial, when coupled with the excessive verdict, indicate passion or prejudice. He argues that the trial was characterized by epithets directed against him and that the jury's prejudice was deliberately fostered by respondents' testimony and arguments. We have reviewed the few incidents to which he refers, and we conclude his claim is without merit. The remarks cited are trivial and are far from the extreme or inflammatory incidents which, when viewed in conjunction with an excessive verdict, would indicate passion or prejudice. *James v. Robeck, supra.*

Van Natter also argues that the trial court erred in giving instruction No. 14 on the issue of damages,[4] which provided in part, "In determining the damages, if any, sustained by plaintiffs, you may consider: (1) Personal

---

[4] "It is the duty of the Court to instruct you as to the measure of damages. In instructing you in damages, the Court does not mean to suggest for which party your verdict should be rendered.

"You are instructed that if you find in favor of plaintiffs, you are to assess the amount of damages that the plaintiffs have incurred as a result of the conduct of the defendant.

"The plaintiffs need not prove the exact amount of damages in order to recover substantial damages from the defendant by reason of his actions.

"The case, by its nature, may be difficult for the plaintiffs to prove with exactitude. The defendant cannot escape liability and damages to plaintiffs simply by reason of such difficulty in the ascertainment of the amount of the damages.

"In the event you find in favor of plaintiffs, it will be your duty to assess such amount as damages as in your judgment is proper under the evidence presented.

"In determining the damages, if any, sustained by plaintiffs, you may consider:

humiliation, mental anguish and suffering sustained by plaintiffs."

In making his exceptions Van Natter argued strenuously, and correctly, that this instruction, which was evidently intended to inform the jury regarding the measure of damages for defamation, probably gave the impression that humiliation and mental suffering are compensable injuries in an action for breach of contract. Damages for mental suffering, however, are not recoverable in such an action unless the breach was wanton or reckless and the defendant would have reason to know, when the contract was made, that a breach would cause mental suffering for reasons other than pecuniary loss. Restatement of Contracts § 341 (1932). *Cf. Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 564 P.2d 1137 (1977). Respondents have made no showing that would bring this case within the ambit of the above section of Restatement. The jury was improperly instructed, and Van Natter is entitled to a new trial on the issue of damages.

We are not unmindful of the frustration the trial judge must have experienced. One party to this suit submitted approximately 60 proposed instructions. Both sides made numerous exceptions to the court's instructions. The record

---

"(1) Personal humiliation, mental anguish and suffering sustained by plaintiffs.

"(2) Impairment of plaintiff Craig Cooperstein's reputation as a real estate broker.

"(3) Impairment of plaintiff Thomas Dickinson's reputation as a mortgage banker.

"(4) You may consider damages, if any, which will be sustained in the future as well as damages, if any, already sustained by plaintiffs as the result of the statements, if any, made about plaintiffs by defendant.

"The burden of proving damages rests with plaintiffs and it is for you to determine whether any particular element has been proven by a preponderance of the evidence.

"The law has not furnished us with any fixed standards by which to measure personal humiliation, mental anguish, and suffering or impairment of professional reputation. With reference to these matters, you must be governed by your own judgment, by the evidence in this case and by these instructions." Instruction No. 14.

indicates the court strove to accommodate all parties, and at one point stated,

> I am going to recess now and I am going into chambers to rework some instructions and I think it's a beautiful example of how one wrong word in an otherwise good instruction can blow me out of the water. My thought was to ask Mr. Robinson to respond to the voluminous instruction exceptions that Mr. Van Natter has made but I think I am just going to have to pour [*sic*] through them and make my own judgments and I will try before one–thirty to submit some substituted instructions and when I do I will simply let the record show that both sides strenuously protest what I have done and get to the jury.

Although the experienced trial judge was conscientious and exceedingly patient, it is not surprising that error would occur under the circumstances presented; nonetheless, a new trial is required on the damage issue.

However, Van Natter is not entitled to a new trial on the question of liability for breach of contract. Even though it was error to submit the defamation issue to the jury, Van Natter has not shown the verdict on the breach of contract claim to have been the result of passion or prejudice. Moreover, there is substantial evidence to support the jury's verdict.

We have reviewed the other issues raised and find them to be without merit.

The judgment n.o.v. dismissing the defamation claim is affirmed, and the cause is remanded for retrial on the sole issue of damages for breach of contract.

ANDERSEN and DORE, JJ., concur.

Reconsideration denied July 11, 1980.

Review denied by Supreme Court October 10, 1980.