**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 8, 2021

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 8, 2021

ERIN L. LENNON
SUPREME COURT CLERK

_González, C.J._
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| GERRI S. COOGAN, the spouse of JERRY D. COOGAN, deceased, and JAMES P. SPURGETIS, solely in his capacity as the Personal Representative of the Estate of JERRY D. COOGAN, Deceased, | NO. 98296-1 |
| Petitioners, | |
| vs. | Filed: <u>July 8, 2021</u> |
| BORG-WARNER MORSE TEC INC., (sued individually and as successor-in-interest to BORG-WARNER CORPORATION); CATERPILLAR GLOBAL MINING, LLC (sued individually and as a successor-in-interest to BUCYRUS INTERNATIONAL f/k/a BUCYRUS-ERIE CO.); CERTAINTEED CORPORATION; DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY); DEERE & COMPANY (d/b/a JOHN DEERE: FMC CORPORATION (d/b/a LINK-BELT Cranes and Heavy Construction Equipment); FORMOSA PLASTICS CORPORATION U.S.A (sued individually and as parent, alter ego and successor-in-interest to J-M MANUFACTURING COMPANY and to J-M A/C PIPE CORPORATION); HOLLINGSWORTH & VOSE COMPANY; HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued individually and as successor-in-interest to BENDIX CORPORATION); J-M | |

MANUFACTURING COMPANY, INC. (sued individually and as parent and alter ego to J-M A/C PIPE CORPORATION); KAISER GYPSUM COMPANY, INC.; LINK-BELT CONSTRUCTION EQUIPMENT COMPANY, L.P., LLLP; NORTHWEST DRYER & MACHINERY CO.; OFFICEMAX, INCORPORATED (f/k/a BOISE CASCADE CORPORATION); PARKER-HANNIFIN CORPORATION; PNEUMO ABEX LLC (sued as successor-in-interest to ABEX CORPORATION); SABERHAGEN HOLDINGS, INC. (sued as successor-in-interest to THE BROWER COMPANY); STANDART MOTOR PRODUCTS, INC. d/b/a EIS; SPX CORPORATION (sued individually and as successors-in-interest to UNITED DOMINION INDUSTRIES LIMITED f/k/a AMCA International Corporation, individually and as successor in interest to Desa Industries Inc. and/or Insley Manufacturing as well as Koehring Company, individually and as successor in interest to Schield Bantam Company); TEREX CORPORATION d/b/a Koehring Company individually and as successor-in-interest to Schield Bantam Company; and WELLONS, INC.,

Defendants,

GENUINE PARTS COMPANY d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (a/k/a NAPA), and NATIONAL AUTOMOTIVE PARTS ASSOCIATION,

Respondents.

2

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

STEPHENS, J.—Doy Coogan died of peritoneal mesothelioma after years of asbestos exposure through his automotive repair work and excavation business. A jury unanimously found Genuine Parts Company (GPC) and National Automotive Parts Association (NAPA) liable for Coogan's wrongful death and entered an $81.5 million verdict for his family and estate. GPC and NAPA moved for a new trial or alternatively a remittitur of damages, which the trial court denied.

The Court of Appeals reversed the trial court in part and vacated the jury's damages award. Though it rejected claims for a new trial premised on alleged misconduct by plaintiff's counsel, it concluded that the trial court erred by excluding one of GPC and NAPA's expert witnesses and that the jury's award was excessive. Specifically, the Court of Appeals rejected the jury's award of noneconomic damages in favor of its own "necessarily . . . subjective" determination that the amount of damages was "so excessive that it shock[ed] the court's conscience." *Coogan v. Borg-Warner Morse Tec Inc.*, No. 51253-0-II, slip op. at 26, 25 (Wash. Ct. App. Feb. 19, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051253-0-II%20Unpublished%20Opinion.pdf.

3

We granted review to address the appropriate standards for reviewing posttrial motions to set aside jury verdicts. While appellate review serves an essential purpose in safeguarding the integrity of the jury process, it must remain limited. Here, the Court of Appeals overstepped its limited role and inappropriately substituted its own judgment for that of the trial court and, most importantly, the jury. Accordingly, we reverse the Court of Appeals and reinstate the jury's verdict in full.

## FACTS AND PROCEDURAL HISTORY

Coogan spent decades working on cars and repairing the industrial equipment used in his excavation business. Throughout that time, Coogan purchased brakes, clutches, and other asbestos-containing parts distributed by GPC and sold in local NAPA stores. In 2015, as a result of cumulative exposure to asbestos, Coogan fell gravely ill.

Coogan was soon diagnosed with malignant mesothelioma in his peritoneum that metastasized to other parts of his body. Tumors developed in his abdomen, diaphragm, and both lungs. The tumors caused fluid to build up in ascites, putting painful pressuring on Coogan's internal organs and making it difficult for him to breathe. To relieve that pressure, doctors had to drain fluid out of Coogan's

4

abdomen every week. Eventually, they had to place a catheter in Coogan's chest to drain fluid from his lungs even more frequently. Coogan's tumors also obstructed his bowels, leading to anorexia and malnutrition. Coogan's body began to deteriorate from a lack of nutrients. He developed open wounds on his body. His lungs collapsed. His kidneys failed. Unable to eat, drink, or breathe without pain, Coogan died six months after he first sought medical attention. He was 67 years old.

Coogan's widow, daughters, and estate sued GPC, NAPA, and several other entities for their role in causing Coogan's premature death. Every defendant except GPC and NAPA was dismissed by the trial court or settled the claims against them. After a 12 week trial, the jury unanimously found GPC and NAPA were liable for Coogan's death and entered an $81.5 million verdict against them. That damages verdict is made up of four parts: $30 million for Coogan's pain and suffering, $30 million to compensate Coogan's widow for her loss of consortium, $20 million to compensate Coogan's daughters for their loss of consortium, and $1.5 million for the loss of services Coogan would have provided to his family had he survived.

GPC and NAPA moved for the trial court to set aside the jury's verdict and grant a new trial on liability and damages under CR 59(a) or, alternatively, to enter a remittitur of damages under RCW 4.76.030. They argued that the trial court

erroneously excluded the testimony of a medical expert and that the sizable verdict was excessive and the result of passion or prejudice brought on by Coogan's attorney's alleged misconduct. The trial court denied that motion, finding GPC and NAPA effectively went "through [the] record and pull[ed] out this question and that one and str[u]ng together an argument that looks like there was some prejudice" where none existed. Verbatim Tr. of Proceedings (VTP) (Dec. 1, 2017) at 56. The trial court also found GPC and NAPA's arguments that the damages award was excessive contradicted this court's precedent and "the enormous deference our Appellate Courts and our constitution give[] to the weight of the jury's verdict." VTP (Dec. 1, 2017) at 58-59.

GPC and NAPA timely appealed from the denial of their new trial motion.[1] While their appeal was pending, GPC and NAPA moved for relief from judgment under CR 60 on the basis that the Coogan family misrepresented the quality of Coogan's relationship with his widow and daughters. The trial court denied that motion, so GPC and NAPA amended their appeal to challenge that ruling as well.

In an unpublished opinion, the Court of Appeals affirmed the jury's verdict on liability but set aside the damages award. The court first determined the trial

---

[1] GPC and NAPA did not appeal the trial court's denial of their alternative motion for remittitur under RCW 4.76.030.

court abused its discretion by excluding the expert testimony of Dr. Gary Schuster, who would have testified that Coogan had a history of heavy alcohol use and the state of his liver suggested he may have had advanced cirrhosis that could have reduced his life expectancy to only 5 years. Because the jury's damages award to Coogan's widow and daughters for their loss of consortium and services was based in part on actuarial evidence that Coogan would have likely lived for 15 more years but for his mesothelioma, the Court of Appeals reversed that award. Next, the Court of Appeals considered the jury's award for Coogan's pain and suffering and determined, "[A]t first blush, that the pain and suffering verdict [rendered by the jury] here is 'beyond all measure, unreasonable and outrageous.'" *Coogan*, slip op. at 26 (internal quotation marks omitted) (quoting *Bunch v. King County Dep't of Youth Servs.,* 155 Wn.2d 165, 179, 116 P.3d 381 (2005)). Finally, the court considered GPC and NAPA's argument that alleged misconduct by Coogan's counsel prejudiced the jury in its assessment of both liability and damages. Agreeing with the trial court that no reversible error was shown, the court declined to set aside the jury's finding of liability. However, in light of its reversal of key parts of the damages award, the Court of Appeals ordered a new trial on damages.

Coogan's widow and estate petitioned this court for review, which we granted. We also granted review of conditional issues raised by GPC and NAPA in their

7

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

answer to the petition for review. *Coogan v. Borg-Warner Morse Tec Inc.,* 195 Wn.2d 1024, 466 P.3d 776 (2020).

## ANALYSIS

Trial by jury is the bedrock of our justice system. We trust juries to render verdicts based on their assessment of the evidence according to the law as instructed by the trial court. Appellate review is appropriately limited, serving as a backstop to ensure trials are conducted fairly, the law is applied correctly, and the verdict is within the bounds of justice. Apart from answering questions of law and reviewing the trial court's discretionary rulings for any manifest abuse of discretion, appellate courts will not substitute their own judgment for that of the trial court or jury. Most relevant here, we will not set aside a jury's verdict unless circumstances clearly show it is the product of an unfair process or improper considerations, such that no reasonable person could believe the verdict is just. *Gilmore v. Jefferson County Pub. Transp. Benefit Area*, 190 Wn.2d 483, 494, 415 P.3d 212 (2018).

The principal issue in this case is how an appellate court evaluates a posttrial claim that the jury's verdict is excessive or the result of passion and prejudice. In reviewing the jury's verdict, the Court of Appeals rejected GPC and NAPA's claims to set it aside, in whole or as to damages, due to alleged misconduct of Coogan's

counsel. However, the appellate court reversed the jury's damages verdict because it disagreed with one of the trial court's evidentiary rulings relevant to damages for loss of consortium and services, and because it believed the size of the verdict for Coogan's pain and suffering was "'flagrantly outrageous and extravagant' on its face." *Coogan*, slip op. at 25 (quoting *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 837, 699 P.2d 1230 (1985)).

We first address the Court of Appeals' holding that the trial court abused its discretion by excluding the testimony of defense expert, Dr. Gary Schuster. Though the Court of Appeals believed the trial court should have "simply preclud[ed] any reference to alcohol in that testimony," *Coogan*, slip op. at 21, we hold the trial court acted well within its discretion. Next we consider the trial court's refusal to set aside the jury's verdict, in whole or in part, based on alleged instances of misconduct by Coogan's counsel. We agree with both the trial court and the Court of Appeals that a new trial is not warranted on this basis.

We next examine the Court of Appeals' determination that, notwithstanding substantial evidence in the record, the jury's $30 million award for Coogan's pain and suffering during his final months was "'beyond all measure, unreasonable and outrageous.'" *Coogan*, slip op. at 23 (internal quotation marks omitted) (quoting *Bunch*, 155 Wn.2d at 179). We conclude that the Court of Appeals overstepped the

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

limited role appellate courts are supposed to play in our civil justice system and substituted its own subjective judgment for that of the jury and the trial court based on nothing more than the size of the verdict. Because the verdict is supported by substantial evidence and the record does not clearly indicate that the verdict resulted from passion or prejudice, or was so beyond the bounds of justice that no reasonable person could believe it is correct, we reverse the Court of Appeals and reinstate the jury's verdict in full.

Finally, we address GPC and NAPA's argument for relief from judgment under CR 60(b). They claim Coogan's family and attorney intentionally hid evidence of family discord until after trial. We conclude the trial court did not abuse its discretion by denying the CR 60(b) motion because GPC and NAPA were aware of evidence of family discord in ongoing probate proceedings and chose not to pursue that evidence until they lost this trial.

I.     The Trial Court Properly Applied ER 403 To Exclude Speculative Expert
       Testimony That Posed a Significant Risk of Unfair Prejudice

The Court of Appeals concluded the trial court erred by excluding the expert testimony of Dr. Schuster, an internal medicine specialist who would have suggested that Coogan may have suffered from late stage liver cirrhosis that significantly reduced his life expectancy. The Court of Appeals reasoned that even if Dr.

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

Schuster's "testimony had minimal probative value," it should have been admitted because it was "probative of a central issue in the case": Coogan's life expectancy but for the mesothelioma. *Coogan*, slip op. at 21.

That reasoning is inconsistent with our precedent. Before admitting expert testimony regarding "scientific, technical, or other specialized knowledge," trial courts must ensure that testimony "will assist the trier of fact." ER 702. To assist the trier of fact, "[t]he expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption." *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016) (citing *Melville v. State*, 115 Wn.2d 34, 41, 793 P.2d 952 (1990)). "When an expert fails to ground [their] opinions on facts in the record, courts have consistently found that the testimony is overly speculative and inadmissible." *Id.* (citing *Moore v. Hagge*, 158 Wn. App. 137, 241 P.3d 787 (2010); *State v. Johnson*, 150 Wn. App. 663, 208 P.3d 1265 (2009); *State v. Lewis*, 141 Wn. App. 367, 166 P.3d 786 (2007); *Doyle v. Nor-W. Pac. Co.*, 23 Wn. App. 1, 5-6, 594 P.2d 938 (1979)).

The trial court's decision to exclude Dr. Schuster's testimony as overly speculative is sound. Dr. Schuster would have testified that Coogan stood to live only 5 more years, not the 15 years predicted by actuarial evidence. Dr. Schuster

based that opinion on his belief that Coogan "had a stage 3 level of liver disease or cirrhosis." 26 Verbatim Report of Proceedings (VRP) (Mar. 6, 2017) at 145. That belief, in turn, was based on the fact that Coogan had ascites, or fluid buildup, around his liver and spleen. *See* 26 VRP (Mar. 6, 2017) at 151 ("If you do not have the ascites, then you are stage 2."). But cirrhosis is not the only cause of ascites; Coogan's physicians "ascribe[d] the ascites to the mesothelioma." 26 VRP (Mar. 6, 2017) at 155.

Dr. Schuster "admitted that a significant source of the fluid build up for the patient that we're talking about, Doy Coogan, was his cancer." 26 VRP (Mar. 6, 2017) at 160. Critically, when asked if there was "[a]ny[]way to figure . . . out" "whether zero percent, one percent, 12 percent," or any percent of Coogan's ascites could be conclusively ascribed to cirrhosis and not mesothelioma, Dr. Schuster's response was clear: "You can't." 26 VRP (Mar. 6, 2017) at 160. Even so, Dr. Schuster opined that it was possible Coogan had a shortened life expectancy because "we know he has large portal veins, the varices," and "an enlarged spleen," all of which suggests "someone has cirrhosis." 26 VRP (Mar. 6, 2017) at 163. But when pressed, Dr. Schuster confirmed that "no one, based on those things alone, would stage someone, in the absence of ascites, as a *stage 3* cirrhosis patient." 26 VRP (Mar. 6, 2017) at 164 (emphasis added).

Dr. Schuster's opinion that Coogan had only five years to live absent mesothelioma was based entirely on death rate statistics for stage 3 cirrhosis patients: "20 percent per year mortality, over a five year time frame. In other words, 20 percent per year, or a lifespan of a maximum of approximately five years." 26 VRP (Mar. 6, 2017) at 145; *see also* 26 VRP (Mar. 6, 2017) at 161 ("[T]he sole basis . . . of understanding that Doy Coogan would have died in five years from cirrhosis is directly related to the staging, finding it to be stage 3."). But Dr. Schuster admitted he could not say if *any* of Coogan's ascites—"the definition of stage 3"—were caused by cirrhosis. 26 VRP (Mar. 6, 2017) at 161, 164.

Accordingly, there is no basis for the opinion that Coogan's life expectancy was only five years. As the trial court explained when granting Coogan's motion to exclude Dr. Schuster's testimony, "Even if one accepts that there is stage 2 cirrhosis, then the death rate is 3.5 percent per year. . . . 3.5 percent for stage 2 would take Mr. Doy Coogan to the end of his normal life expectancy." 26 VRP (Mar. 6, 2017) at 166-67. The trial court appropriately excluded Dr. Schuster's testimony "that Mr. Coogan's life expectancy was between one and five years . . . [as] too attenuated and in many respects speculative." 26 VRP (Mar. 6, 2017) at 166.

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

Such speculative evidence is of little help to the jury. "The problem with 'speculative testimony is that the trier of fact will be forced to speculate as to causation without an adequate factual basis.'" *Gerlach v. Cove Apts., LLC,* 196 Wn.2d 111, 123, 471 P.3d 181 (2020) (quoting *Volk*, 187 Wn.2d at 277). Dr. Schuster's testimony would have suggested Coogan *might have* had only five years to live because he *might have* had stage 3 cirrhosis. "'Such speculative testimony is not rendered less speculative or of more consequence to the jury's determination simply because it comes from an expert.'" *Id.* (quoting *Lewis*, 141 Wn. App. at 389). The trial court's decision to exclude Dr. Schuster's speculative testimony was proper under ER 702.

Trial courts also have discretion to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. The probative value of speculative evidence is minimal and thus easily outweighed by the danger of unfair prejudice. "'[T]rial courts enjoy wide discretion in balancing the probative value of evidence against its potentially prejudicial impact.'" *Gerlach*, 196 Wn.2d at 120 (alteration in original) (internal quotation marks omitted) (quoting *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 671, 230 P.3d 583 (2010)). Accordingly, appellate courts review decisions to exclude evidence "for abuse of discretion, deferring to the trial court's judgment unless we are 'convinced that *no reasonable*

14

*person* would take the view adopted by the trial court.'" *Id.* at 119 (internal quotation marks omitted) (quoting *Gilmore*, 190 at 494).

A danger of unfair prejudice exists when "'evidence is likely to stimulate an emotional response rather than a rational decision.'" *Id.* at 120 (quoting *Salas*, 168 Wn.2d at 671). As the Court of Appeals acknowledged, "Evidence of prior alcohol abuse has the potential to be very prejudicial." *Coogan*, slip op. at 20; *see also Gerlach*, 196 Wn.2d at 123-24. Given the minimal probative value of Dr. Schuster's speculative testimony, the trial court reasonably determined "the prejudicial effect of characterizing Mr. Coogan as an alcoholic, a chronic, heavy drinker, is something that I think is unduly prejudicial. And on an ER 401, 402, 403 balancing test, I'm going to grant the motion to exclude." 2 VTP (Jan. 19, 2017) at 97; *see also* 26 VRP (Mar. 6, 2017) at 167 (trial court explaining after the offer of proof that it would "stand by my earlier ruling [that] Dr. Schuster's testimony will be declined"). That determination was well within the trial court's discretion under ER 403.

The Court of Appeals would have preferred a different approach, reasoning Dr. Schuster's testimony was admissible under ER 702 and concluding "the trial court abused its discretion by excluding Dr. Schuster's . . . testimony under ER 403 rather than simply precluding any reference to alcohol in that testimony." *Coogan*,

15

slip op. at 21. But, as explained above, the trial court's exclusion of Dr. Schuster's speculative testimony was proper under ER 702. And even if Dr. Schuster's testimony were admissible, an appellate court cannot hold that a trial court abused its discretion "'simply because it would have decided the case differently.'" *Gilmore,* 190 Wn.2d at 494 (quoting *State v. Salgado-Mendoza,* 189 Wn.2d 420, 427, 403 P.3d 45 (2017)). Instead, the appellate court "'must be convinced that no reasonable person would take the view adopted by the trial court.'" *Id.* (internal quotation marks omitted) (quoting *Salgado-Mendoza,* 189 Wn.2d at 427). And "'[i]f the basis for admission [or exclusion] of the evidence is fairly debatable,'" the appellate court "'will not disturb the trial court's ruling.'" *Id.* (alterations in original) (internal quotation marks omitted) *(*quoting *Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 352, 333 P.3d 388 (2014)).

We conclude that the Court of Appeals erred by failing to give sufficient deference to the trial court's decision to exclude Dr. Schuster's testimony. We therefore reverse the Court of Appeals' decision to set aside the jury's award of damages for loss of consortium and loss of services damages in light of that evidentiary ruling.

II.     The Trial Court Properly Denied GPC and NAPA's CR 59(a) Motion for a New Trial Premised on Alleged Irregularity or Misconduct by Plaintiffs' Counsel

GPC and NAPA challenge the trial court's denial of their motion for a new trial under CR 59(a)(1) and (2), arguing that Coogan's attorney repeatedly engaged in misconduct that undermined the fairness of the trial and prejudiced the jury against them. In denying that motion, the trial court observed:

> [I]n a three-month long trial, it is impossible not to be able to go through a record and pull out this question and that one and string together an argument that looks like there was some prejudice when the great mass of the evidence is what the jury is supposed to consider and what I have to assume they did consider.

VTP (Dec. 1, 2017) at 56.

The Court of Appeals, with one judge dissenting, affirmed the trial court's decision to deny a new trial on this basis. The majority concluded the record did not clearly show the alleged misconduct had a prejudicial effect on the jury or otherwise undermined the verdict. We agree and affirm this portion of the Court of Appeals opinion.

New trials premised on misconduct are appropriate when "misconduct of [the] prevailing party" "materially affect[s] the substantial rights of [the aggrieved] parties." CR 59(a)(2). A party seeking a new trial for misconduct must establish that (1) the challenged conduct was actually misconduct, (2) the misconduct was

17

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

prejudicial, (3) the misconduct was objected to at trial, and (4) the misconduct was not cured by the trial court's instructions. *Teter v. Deck*, 174 Wn.2d 207, 226, 274 P.3d 336 (2012). The key question is whether "'such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial.'" *Alum. Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000) (internal quotation marks omitted) (quoting *Moore v. Smith*, 89 Wn.2d 932, 942, 578 P.2d 26 (1978)).

Appellate courts review a trial court's denial of a motion for a new trial for abuse of discretion. *Id.* "[I]t is in this area of the new-trial field that the favored position of the trial judge and his sound discretion should be accorded the greatest deference." *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 440, 397 P.2d 857 (1964). *See also State v. Lord*, 117 Wn.2d 829, 887, 822 P.2d 177 (1991) ("The trial court is in the best position to most effectively determine if [counsel's] misconduct prejudiced a [party's] right to a fair trial."), *abrogated on other grounds by State v. Schierman*, 192 Wn.2d 577, 438 P.3d 1063 (2018). Accordingly, appellate courts will defer to the reasoned judgment of the trial court "[u]nless some prejudicial effect is clear from the record." *Gilmore*, 190 Wn.2d at 503.

Here, the Court of Appeals reviewed the record and properly determined that none of the alleged misconduct highlighted by GPC and NAPA had a clear

18

prejudicial effect on the jury. GPC and NAPA first argue that Coogan's attorney engaged in misconduct by asking a question implying that workers at GPC facilities had died from asbestos-related diseases. We agree that question was improper, as it violated the parties' pretrial stipulation against presenting such evidence. However, the trial court provided the jury with a curative instruction: "There will be no evidence of deaths and the [GPC] facility related to asbestos exposure in this case. You may not consider such fact in your deliberations of this case, and you may not discuss that in your deliberations of the case." 23 VTP (Feb. 28, 2017) at 55. GPC and NAPA argue this instruction was insufficient, but "jurors are presumed to follow the court's instructions." *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). The Court of Appeals acknowledged that "the trial court's instruction could have been worded better" but concluded that this incident "does not rise to the level of misconduct that requires a reversal of the liability verdict" because it was only "one isolated question in a complex trial." *Coogan*, slip op. at 30. Like the Court of Appeals, we cannot find any evidence in the record showing Coogan's attorney's question had a clear prejudicial effect on the jury.

GPC and NAPA next contend that Coogan's attorney engaged in misconduct by asking questions implying that GPC's corporate representative was not prepared to answer questions and so should not have been selected to testify on GPC's behalf.

But, as the Court of Appeals noted, GPC and NAPA cannot show prejudice resulted from these questions because the corporate representative's "lack of preparedness was apparent" to the jury. *Coogan*, slip op. at 31. Before Coogan's attorney even asked the questions at issue, a juror submitted this question for the trial court to ask: "As GPC's corporate representative, is there a reason you have not reviewed materials for this case to better answer questions?" Clerk's Papers (CP) at 9077; 17 VRP (Feb. 15, 2017) at 142. We therefore agree that GPC and NAPA have failed to demonstrate Coogan's attorney's questions about the corporate representative had a prejudicial effect on the jury.

GPC and NAPA also claim Coogan's attorney committed misconduct by asking a question that elicited an outburst from Jay Coogan that defense counsel had accused him of killing his brother, Doy Coogan. On cross-examination, defense counsel asked Jay questions about his relationship with Coogan's counsel and walks that Jay took with her during his deposition. On redirect, to rebut any implication that there was anything inappropriate going on between them, Coogan's attorney asked Jay about their relationship and why he "needed to pretty regularly blow off steam" while being deposed by defense counsel. 16 VRP (Feb. 14, 2017) at 159. Jay replied, "Some of the questions that were asked of me in the deposition were very offensive." 16 VRP (Feb. 14, 2017) at 159. Unprompted, Jay then added, "At

20

one point she [defense counsel] accused me of killing my brother." 16 VRP (Feb. 14, 2017) at 160. The trial court immediately struck the statement and instructed the jury that the remark was irrelevant and should be completely removed from their consideration. Because "jurors are presumed to follow the court's instructions," *Emery*, 174 Wn.2d at 766, and GPC and NAPA do not point to other evidence in the record showing Jay Coogan's outburst had a prejudicial effect on the jury, we agree the trial court did not abuse its discretion by denying the motion for a new trial on this basis.

Finally, GPC and NAPA allege a number of statements Coogan's attorney made during closing argument constituted misconduct. But GPC and NAPA did not object to those statements, even after the trial court invited all parties to place any objections on the record at the end of closing. A timely objection is one of the requirements for a new trial based on attorney misconduct because it prevents parties from gambling on a favorable verdict before claiming error. *Teter*, 174 Wn.2d at 225. The sole exception to the preservation of error requirement is "for misconduct so flagrant that no instruction can cure it." *Id.* (citing *Warren v. Hart*, 71 Wn.2d 512, 518, 429 P.2d 873 (1967)). We need not belabor every belated accusation of misconduct. We agree with the Court of Appeals that GPC and NAPA failed to demonstrate any prejudice caused by Coogan's attorney's closing argument that was

21

so flagrant it could not have been cured by an instruction from the trial court had GPC and NAPA timely objected.

In sum, GPC and NAPA have failed to demonstrate that any alleged misconduct by Coogan's attorney had a clear prejudicial effect on the jury such that GPC and NAPA did not receive a fair trial on liability. On this issue, we affirm the Court of Appeals.

Unfortunately, despite its majority holding that no irregularity or misconduct invalidated the jury's verdict, a different majority of the Court of Appeals vacated the jury's award of noneconomic damages and ordered a new trial.[2] It did so based on its own "necessarily . . . subjective" determination that the amount of damages was "so excessive that it shock[ed] the court's conscience." *Coogan*, slip op. at 26, 25. As discussed next, this was error. Reversal of a jury's damages award on grounds of excessiveness requires a more substantive assessment, grounded in a thorough consideration of all the evidence and any circumstances suggesting passion or prejudice.

---

[2] Notably, of the two Court of Appeals judges comprising the majority that ordered a new trial on the issue of damages, one would have ordered a new trial on both liability and damages under CR 59(a)(1) and (2), agreeing with GPC and NAPA that Coogan's attorney's misconduct prejudiced the jury and infected the entire verdict. *Coogan*, slip op. at 46 (Lee, J., dissenting in part).

III.    Nothing in the Record Demonstrates the Jury's Damages Verdict Was the Result of Passion, Prejudice, or Any Other Improper Consideration That Should Shock the Court's Conscience

As noted, the Court of Appeals agreed with the trial court that GPC and NAPA's allegations of attorney misconduct did not demonstrate the clear prejudice needed to overturn the jury's verdict under CR 59(a)(1) and (2). It separately considered the defendants' argument for a new trial under CR 59(a)(5), which asserted the jury's verdict was "so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice." CR 59(a)(5); *see Coogan*, slip op. at 22. In the course of its brief analysis, the court pivoted away from the language of the court rule and relevant precedent to rely on a somewhat free-floating determination that "the $30 million pain and suffering verdict shocks this court's conscience." *Coogan*, slip op. at 24. But because the jury's damages verdict was supported by substantial evidence, it was error for the Court of Appeals to set it aside without identifying something in the record demonstrating that the jury rendered an excessive verdict because of passion, prejudice, or any other improper consideration.

A. Courts Have a Limited Role in Reviewing Juries' Damages Verdicts

Respect for the jury's role in our civil justice system is rooted in Washington's constitution, which grants juries "the ultimate power to weigh the evidence and

23

determine the facts—and the amount of damages in a particular case is an ultimate fact." *James v. Robeck*, 79 Wn.2d 864, 869, 490 P.2d 878 (1971) (citing WASH. CONST. art. I, § 21). Because the "determination of the amount of damages . . . is primarily and peculiarly within the province of the jury . . . courts should be and are reluctant to interfere with the conclusion of the jury when fairly made." *Bingaman*, 103 Wn.2d at 835 (citing *Baxter*, 65 Wn.2d at 438). "We strongly presume the jury's verdict is correct." *Bunch*, 155 Wn.2d at 179 (citing *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 654, 771 P.2d 711 (1989)).

In narrow circumstances, that strong presumption can be overcome. Courts have long recognized their common law responsibility to ensure that the jury's verdict achieves substantial justice. *See Bond v. Ovens*, 20 Wn.2d 354, 357, 147 P.2d 514 (1944) ("[T]he right to trial by jury and the right of the trial judge to set a jury verdict aside and grant a new trial, on the ground that substantial justice has not been done, have existed side by side for centuries in the English courts, and in our state courts since their creation, and, in fact, in all other systems of judicature founded upon the English common law."); *Coppo v. Van Wieringen*, 36 Wn.2d 120, 123-24, 217 P.2d 294 (1950) ("[W]e have always upheld the right of the trial judge to grant a new trial when he is convinced that substantial justice has not been done, on the theory that it is an exercise of the trial court's inherent power." (citing

24

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

*Sylvester v. Olson*, 63 Wash. 285, 115 P. 175 (1911))). However, when the trial court denies a new trial, the jury's verdict is strengthened and appellate courts owe even greater deference to the judgment of the jury. *See Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 271, 840 P.2d 860 (1992) ("The verdict is strengthened by denial of a new trial by the trial court." (citing *Seaboard Coast Line R.R. Co. v. Gillis,* 294 Ala. 726, 733, 321 So. 2d 202 (1975))).

Washington law recognizes two primary reasons a jury's damages verdict may not achieve substantial justice, which are now codified in court rules. First, the jury's damages verdict might not be supported by the evidence admitted at trial. *See* CR 59(a)(7) (new trial may be granted when "there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law"). In common law terms, courts may set aside a jury's damages verdict if that verdict "'is outside the range of substantial evidence in the record.'" *Bunch*, 155 Wn.2d at 179 (quoting *Bingaman*, 103 Wn.2d at 835). "'The requirement of substantial evidence necessitates that the evidence be such that it would convince an unprejudiced, thinking mind.'" *Id.* (internal quotation marks omitted) (quoting *Indus. Indem. Co. of Nw., Inc. v. Kallevig,* 114 Wn.2d 907, 916, 792 P.2d 520 (1990)). "Where the proponent of a new trial argues the verdict was not based upon the evidence, appellate courts will look to the record to determine whether there was

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

sufficient evidence to support the verdict." *Palmer v. Jensen*, 132 Wn.2d 193, 197-98, 198, 937 P.2d 597 (1997) (citing *McUne v. Fuqua*, 45 Wn.2d 650, 652, 277 P.2d 324 (1954); *Ide v. Stoltenow*, 47 Wn.2d 847, 848, 289 P.2d 1007 (1955); Philip A. Trautman, *Motions Testing the Sufficiency of Evidence,* 42 WASH. L. REV. 787, 811 (1967)).

This analysis is akin to the inquiry courts make in considering a motion for judgment as a matter of law under CR 50, where the court is required to view the evidence and reasonable inferences in the light most favorable to the verdict, without regard to contrary evidence or inferences. *Compare* CR 59(a)(7) (providing new trials may be granted when "there is no evidence or reasonable inference from the evidence to justify the verdict"), *with* CR 50(a)(1) (allowing judgment as a matter of law where "there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue"). *See also Cox v. Charles Wright Acad., Inc.*, 70 Wn.2d 173, 176-77, 422 P.2d 515 (1967) (noting substantial evidence review respects the jury's prerogative to evaluate and weigh evidence).

Appellate and trial courts are equally competent to review the record for legal sufficiency, so appellate courts owe no deference to trial courts' conclusions. *Cf. Paetsch v. Spokane Dermatology Clinic, PS*, 182 Wn.2d 842, 848, 348 P.3d 389

(2015) ("We review judgments as a matter of law de novo." (citing *Faust v. Albertson*, 167 Wn.2d 531, 539 n. 2, 222 P.3d 1208 (2009))). But both appellate and trial courts must show appropriate deference to the jury's constitutional role as the ultimate finder of fact. *James*, 79 Wn.2d at 869; *see also Zorich v. Billingsley*, 55 Wn.2d 865, 869, 350 P.2d 1010 (1960) ("[W]e will not disturb an award of damages made by the jury if it is within the range of substantial evidence in the record which the jury is entitled to believe."). This deference requires courts to presume that the jury resolved every conflict and drew every reasonable inference in favor of the prevailing party. *See* CR 59(a)(7) (new trials may be granted when "there is no evidence or reasonable inference from the evidence to justify the verdict").

In addition to reviewing for substantial evidence, appellate courts appropriately ask if the jury's damages verdict might be based on some improper consideration outside the evidence admitted at trial. *See* CR 59(a)(5) (new trial may be granted when the damages awarded are "so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice"). In common law terms, this occurs when the record "'manifestly show[s] the jury to have been actuated by passion, partiality, prejudice, or corruption,'" or "disclose[s] circumstances foreign to proper jury deliberations . . . [that] shock the sense of justice and sound judgment." *Kramer v. Portland-Seattle Auto Freight,*

27

*Inc.,* 43 Wn.2d 386, 395-96, 261 P.2d 692 (1953) (quoting *Coleman v. Southwick,* 9 Johns. 45 (N.Y. Sup. Ct. 1812)); *see also Bunch*, 155 Wn.2d at 179 ("'An appellate court will not disturb an award of damages made by a jury unless it . . . shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice.'" (quoting *Bingaman*, 103 Wn.2d at 835)). Though sometimes articulated in distinct terms, the passion or prejudice inquiry and the shocks the conscience inquiry ask essentially the same question: Did the jury base its verdict on some malign influence or egregious impropriety at trial rather than the properly admitted evidence? Both inquiries reflect different facets of the common law power of courts to ensure substantial justice has been done and are best considered two sides of the same coin. *Coppo*, 36 Wn.2d at 123-24.

The size of the verdict alone cannot be proof that it was based on passion, prejudice, or any other improper consideration. *Bunch*, 155 Wn.2d at 183 ("'The verdict of a jury does not carry its own death warrant solely by reason of its size.'" (quoting *Bingaman*, 103 Wn.2d at 838)). That is particularly true where the verdict is supported by substantial evidence in the record but is challenged for being shockingly large. As we explained 40 years ago:

> In those instances where the verdict is reasonably within the range of proven damages . . . , then it cannot be found as a matter of law that the verdict was unmistakably so excessive or inadequate as to show that the

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

jury had been motivated by passion or prejudice solely because of the amount.

*James*, 79 Wn.2d at 870-71.[3]

Instead, there must be something in the record showing that the jury's verdict was improperly influenced by "untoward incidents of such extreme and inflammatory nature that the court's admonitions and instructions could not cure or neutralize them."[4] *Id.* at 871. "Before passion or prejudice can justify reduction of a jury verdict, it must be of such manifest clarity as to make it unmistakable." *Bingaman*, 103 Wn.2d at 836 (citing *James*, 79 Wn.2d at 870). Said another way, when a jury's damages verdict is within the range of substantial evidence in the record, courts can order a new trial only if something in the record unmistakably indicates that the verdict is not actually based on that substantial evidence but instead

---

[3] This court has recognized that the substantial evidence inquiry is the threshold question, before turning to the question of excessiveness. *See James*, 79 Wn.2d at 866 ("Our first inquiry is whether the record sustains a verdict of $17,000, for if there is not substantial evidence to support the verdict, the issue of excessive damages becomes moot and ought not stand at all."); *Palmer*, 132 Wn.2d at 197-98 (criticizing Court of Appeals for "limit[ing] its analysis to whether the verdict was so inadequate as to indicate passion or prejudice . . . [without first addressing] whether there was evidence to support the verdict").

[4] This requirement is even more demanding than the factors required to show a new trial on liability is warranted. *See Teter*, 174 Wn.2d at 226 ("a court properly grants a new trial where . . . (2) the misconduct is prejudicial . . . and (4) the misconduct was not cured by the court's instructions").

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

on some improper consideration that gives rise to passion or prejudice, or that otherwise shocks the court's conscience.

Given "our declared reluctance to interfere with the decision of a jury, it should be and indeed is the rare case where [courts] should substitute our judgment for that of the jury." *Washburn*, 120 Wn.2d at 278. This is particularly true for appellate courts, which "can review only the written record, while the factfinder and the trial judge [a]re in the favored position of being able to evaluate the full range of evidence submitted." *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 33, 864 P.2d 921 (1993) (citing *Washburn*, 120 Wn.2d at 268). We once explained why appellate courts defer to the conclusions of trial courts in this way:

> "The judge before whom the cause was tried heard the testimony, observed the appearance and bearing of the witnesses and their manner of testifying, and was much better qualified to pass upon the credibility and weight of their testimony than this court can be. *There are many comparatively trifling appearances and incidents, lights and shadows, which are not preserved in the record, which may well have affected the mind of the judge as well as the jury in forming opinions of the weight of the evidence, the character and credibility of the witnesses, and of the very right and justice of the case.* These considerations cannot be ignored in determining whether the judge exercised a reasonable discretion or abused his discretion in granting or refusing a motion for a new trial."

*Coppo*, 36 Wn.2d at 124 (quoting *McLimans v. City of Lancaster*, 57 Wis. 297, 299, 15 N.W. 194 (1883)).

Accordingly, appellate courts review trial courts' decisions in this area for a manifest abuse of discretion, while still deferring to the jury's constitutional role as ultimate fact finder. *See Washburn*, 120 Wn.2d at 271 ("The verdict is strengthened by denial of a new trial by the trial court." (citing *Seaboard Coast Line,* 294 Ala. at 733)). We will not disturb the trial court's ruling and the jury's verdict unless we are convinced that "'no reasonable person would take the view adopted by the trial court.'" *Gilmore,* 190 Wn.2d at 494 (internal quotation marks omitted) (quoting *Salgado-Mendoza,* 189 Wn.2d at 427).

These compounding layers of deference effectively limit the ability of an appellate court to overturn a verdict supported by substantial evidence to one scenario: when the only reasonable view is that something other than the evidence at trial unmistakably caused the jury's verdict. More intrusive appellate review risks encroaching on the jury's prerogative to weigh the evidence and decide the facts, including the award of damages. *See Washburn*, 120 Wn.2d at 269 ("Given the foregoing constitutional principle . . . [that the jury is the ultimate fact finder], appellate review is most narrow and restrained—the appellate court 'rarely exercises this power.'" (quoting *Bingaman*, 103 Wn.2d at 835)).

B. The Court of Appeals Erred by Reversing the Jury's Damages Verdict
   Because of Its Size and Based on Reweighing the Evidence That Supports
   It

Recognizing the substantial evidence in the record, GPC and NAPA's CR

59(a) motion advanced only one argument for why a new trial on damages was

necessary: the jury's verdict was the result of passion or prejudice caused by the

alleged misconduct of Coogan's attorney. CP at 16362 ("This section explains *why*

the jury rendered a verdict based on passion and prejudice. The trial was saturated

with misconduct by Plaintiffs' counsel from start to finish, as counsel used improper

questioning and argument at every turn to inflame the jury into returning an

excessive verdict."). That motion did not argue the jury's verdict was outside the

range of substantial evidence. CP at 16359 (citing CR 59(a)(1), (2), and (5)—but

not CR 59(a)(7)—as the bases for a new trial). Having acknowledged the jury's

verdict was within the range of substantial evidence, GPC and NAPA can prevail

only if there is something in the record showing that the jury's verdict was

improperly influenced by "untoward incidents of such extreme and inflammatory

nature that the court's admonitions and instructions could not cure or neutralize

them." *James*, 79 Wn.2d at 871.

They cannot make this showing. In rejecting GPC and NAPA's passion or

prejudice argument, the trial court noted:

32

> [I]n a three-month long trial, it is impossible not to be able to go through a record and pull out this question and that one and string together an argument that looks like there was some prejudice when the great mass of the evidence is what the jury is supposed to consider and what I have to assume they did consider.

VTP (Dec. 1, 2017) at 56. After the benefit of briefing, oral argument, and a front-row seat at trial, the trial court concluded the alleged incidents of misconduct by Coogan's attorney were not so egregious as to unmistakably indicate the jury was inflamed by passion or prejudiced against GPC and NAPA.

On appeal, GPC and NAPA tried to buttress their argument that the verdict was the result of passion or prejudice by weaving "shocks the conscience" language into their claims for the first time. Opening Br. of Appellant GPC (Wash. Ct. App. No. 51253-0-II (2018)) at 55 (citing VTP (Dec. 1, 2017) at 52, 57). But the substance of GPC and NAPA's argument for a new trial—on both liability and damages—remains focused on the alleged incidents of misconduct they believe inflamed the jury with passion or prejudice and undermined its verdict.

We review the trial court's denial of the new trial motion for abuse of discretion, conscious that the jury's "verdict is strengthened by denial of a new trial by the trial court." *Washburn*, 120 Wn.2d at 271 (citing *Seaboard Coast Line,* 294 Ala. at 733). We will not disturb the trial court's ruling and the jury's verdict unless we are convinced that "'no reasonable person would take the view adopted by the

trial court.'" *Gilmore,* 190 Wn.2d at 494 (internal quotation marks omitted) (quoting *Salgado-Mendoza,* 189 Wn.2d at 427). Unfortunately, the Court of Appeals exceeded these limitations on appellate review and effectively substituted its judgment for that of the trial court and the jury.

First, it is important to recognize that the Court of Appeals' decision to overturn the damages verdict as shockingly excessive is undercut by its decision to uphold the liability verdict. The Court of Appeals appropriately rejected GPC and NAPA's challenge to the liability verdict premised on instances of attorney misconduct alleged to have prejudiced the jury against GPC and NAPA. Common sense suggests that if those incidents did not prejudice the jury's verdict on liability, they did not prejudice the jury's verdict on damages either. Nothing in the record demonstrates that the jury's verdict was the result of "passion or prejudice . . . [that was] of such manifest clarify as to make it unmistakable." *Bingaman*, 103 Wn.2d at 836 (citing *James*, 79 Wn.2d at 870).

Second, the Court of Appeals failed to defer to the jury's assessment of the evidence presented, and essentially reweighed the evidence of Coogan's suffering in the months before he died. *Coogan*, slip op. at 25 ("Given the short time that [Coogan] was sick, the jury's $30 million award was 'flagrantly outrageous and

extravagant' on its face." (quoting *Bingaman*, 103 Wn.2d at 837)). That reasonable

minds might differ on the economic "value" of Coogan's suffering is evident from

Judge Melnick's dissent. *Coogan*, slip op. at 54 (Melnick, J., dissenting in part)

("The verdict for these noneconomic damages does not shock my conscience. No

amount of money could ever compensate [Coogan] for the suffering he endured as

a result of peritoneal mesothelioma.").

There is no legal standard for determining the length of suffering needed to

support significant damages, especially where that suffering is severe and involves

an awareness of impending death. In *Bingaman*, where a new mother died of

eclampsia caused by medical malpractice, the Court of Appeals ordered a new trial

on damages because it believed the jury's pain and suffering award was excessive

given the "period of sporadic suffering lasting less than 1 day." *Bingaman v. Grays*

*Harbor Cmty. Hosp.,* 37 Wn. App. 825, 833, 685 P.2d 1090 (1984). We reversed,

explaining:

> Although the decedent was unconscious during some part of her last 35 hours of life, due to her condition or sedation or both, *substantial evidence was presented from which the jury could find that during much of that period of time she not only suffered extreme conscious pain, fear and despair at not being helped, but also had the conscious realization her life and everything fine that it encompassed was prematurely ending*. . . . It is admittedly difficult to assess in monetary terms the damages for such pain and suffering, but although the

> damages for the decedent's pain and suffering awarded by the jury were very substantial, that award does not under the facts and circumstances established by the evidence shock our sense of justice and sound judgment.

*Bingaman*, 103 Wn.2d at 837-38 (emphasis added).

In this case, the evidence showed that Coogan suffered for months from an ever-growing array of symptoms that robbed him of the ability to eat, drink, or breathe without pain. His body deteriorated with alarming speed, while fluid built up in and around his internal organs. He knew death was fast approaching. Given the severity of Coogan's suffering, the jury's verdict does not shock the conscience or offend notions of justice. "Our conscience is apparently more resilient than the Court of Appeals to shocks." *Bunch*, 155 Wn.2d at 182.

In setting aside the damages verdict, the Court of Appeals intruded on the jury's constitutional prerogative and impermissibly based its decision on the size of the verdict and its own subjective reweighing of the evidence. There was no challenge to the sufficiency of the evidence to support the verdict. There was nothing in the record unmistakably showing the jury's verdict was based on some improper consideration instead of the legally sufficient evidence. All the Court of Appeals had left to consider was the verdict's size, which it found "'flagrantly outrageous and extravagant' on its face." *Coogan*, slip op. at 25 (quoting *Bingaman*,

36

103 Wn.2d at 837). But "'[t]he verdict of a jury does not carry its own death warrant solely by reason of its size.'" *Bunch*, 155 Wn.2d at 183 (quoting *Bingaman*, 103 Wn.2d at 838). Because the verdict is supported by substantial evidence and the record does not clearly indicate that the verdict resulted from passion or prejudice or was so beyond the bounds of justice that no reasonable person could believe it is correct, we reverse the Court of Appeals and reinstate the jury's verdict in full.

IV. The Trial Court Properly Denied GPC and NAPA's CR 60 Motion for Relief from Judgment

Having vacated the jury's damages verdict on other grounds, the Court of Appeals did not address GPC and NAPA's argument that the trial court abused its discretion by denying their motion for relief from judgment under CR 60(b). We address that argument here because GPC and NAPA conditionally raised it in their answer to the petition for review.[5] "A trial court's denial of a motion to vacate under CR 60(b) will not be overturned on appeal unless the court manifestly abused its discretion." *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000) (citing *In re Guardianship of Adamec*, 100 Wn.2d 166, 173, 667 P.2d 1085 (1983)). "In our review for abuse of discretion, we may affirm the trial court on any basis that the

---

[5] The other issues conditionally raised by GPC and NAPA—whether the alleged misconduct by Coogan's attorney warrants a new trial on liability and whether the entire verdict was shockingly excessive—are resolved by our analysis above.

record supports." *State v. Arndt*, 194 Wn.2d 784, 799, 453 P.3 696 (2019) (citing

*LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

GPC and NAPA accuse Coogan's family and attorney of misrepresenting the

nature of Coogan's relationship with his widow by intentionally withholding

evidence that contradicted the image presented to the jury. That accusation stems

from declarations filed in a separate dispute in probate court between Coogan's

widow and daughters over the interpretation of Coogan's will. In February 2018,

two months after the trial court in this case denied GPC and NAPA's motion for a

new trial, Coogan's widow moved for partial summary judgment in probate court.

That motion argued she was entitled to half of the property acquired during her

relationship with Coogan prior to their marriage in 2011. CP at 21001. Because the

claim encompassed property Coogan ostensibly left to his daughters in his will, the

daughters opposed the motion and filed declarations challenging the widow's

account of the nature and quality of her early relationship with Coogan. CP at

21081-86.

GPC and NAPA monitored the Coogan family's probate dispute throughout

trial and discovered these new filings during a routine docket check. GPC and

NAPA moved for relief from judgment under CR 60(b)(3) and (4), arguing the

declarations constituted newly discovered evidence and that Coogan's family and

attorney had intentionally misrepresented the quality and nature of Coogan's relationship with his widow in order to trick the jury into returning a larger damages award for loss of consortium.

Courts will grant a motion to vacate the judgment under CR 60(b)(3) when newly discovered evidence "(1) would probably change the result if a new trial were granted, (2) was discovered since trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." *Jones v. City of Seattle*, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). Relief under CR 60(b)(4) is appropriate when the party challenging the judgment "establish[es] . . . by clear and convincing evidence" that it "was prevented from fully and fairly presenting its case or defense" due to "fraud, misrepresentation, or other misconduct of an adverse party." *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990) (citing *Peoples State Bank v. Hickey,* 55 Wn. App. 367, 372, 777 P.2d 1056 (1989)).

The trial court denied the motion for relief from judgment after reviewing the "1078 pages of documentation submitted by [GPC and NAPA] in support of their motion" and the "881 pages of documentation submitted by [Coogan] in opposition to the motion." CP at 22555. The trial court's order notes its familiarity with the parties' prior motions on the issue of allegedly conflicting probate and trial evidence.

CP at 22556. For example, the trial court had previously denied a motion to admit an unredacted probate declaration from Coogan's widow because

> [t]his probate document was in existence. And everybody knew about it from the get-go. That's been a common knowledge among the Defendants in this case.
>
> So if that was something that everybody wanted to explore, there was a simple method by which they could have done so. . . .
>
> . . . .
>
> I think that everybody had an opportunity to require that the widow be here. Nobody chose to do that. *Everybody knew about the probate action and that there was some kind of discord.* Everybody has these probate documents well in sufficient time to have sent a Notice to Adverse Party to Attend Trial, and nobody did it.
>
> . . . .
>
> The question was: Up to the time of death, what was the relationship like? And if you believe that there is some reason that Ms. Coogan should have been present, it was just a simple matter to send out the notice.

31 VTP (Mar. 14, 2017) at 9-10, 13. GPC and NAPA failed to timely pursue relevant evidence from the probate matter, only to turn around and demand it be admitted later.[6] That continued in their motion for relief from judgment.

---

[6] This failure appears to be a consequence of GPC and NAPA's trial strategy, which was to focus exclusively on denying liability and to not argue the appropriate amount of damages.

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

The central premise of GPC and NAPA's argument for relief from judgment is that Coogan's family and attorney deliberately kept any disputes about the quality and nature of Coogan's relationship with his widow hidden from the jury by waiting until after trial concluded to make those arguments in probate court. But a review of the record shows that is simply not the case: Coogan's widow and daughters made substantially similar arguments in probate court before trial in this case even began.

In probate motions filed in March 2016, Coogan's widow argued she was entitled to half the property acquired during her relationship with Coogan prior to their marriage in 2011. CP at 20799 ("This Petition seeks a determination and direction from the [Probate] Court as to whether or not Gerri Sue is entitled to all of the jointly titled property and one half (1/2) of the non-jointly titled property which had been jointly accumulated by [Coogan] and Gerri Sue as community property during their twenty (20) year 'marital like' and marital relationship." (emphasis omitted)).

In a May 2016 motion to remove Coogan's widow as personal representative of Coogan's estate, Coogan's daughters disputed the notion that the nature and quality of the widow's relationship with Coogan prior to their marriage entitled her to that property. CP at 20897 ("Not satisfied with her community property interest in assets since her marriage in 2011, she seeks a further determination from this

41

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Court that she and Jerry Coogan had an equity relationship so she can add 16 more years from which to claim a 'community like' interest in Jerry Coogan's business, residential real property, business real property, equipment, improvements, and collector vehicles. . . . In fact, she is requesting that this Court declare that she and Jerry Coogan were in an equitable relationship for two years before his divorce from Caren Coogan was finalized in 1997." (emphasis omitted)). While the daughters did not file the same supporting declarations in 2016 as they did in 2018, they clearly disagreed with the widow's representations regarding her early relationship with Coogan.

Contrary to GPC and NAPA's claims, the quality and nature of Coogan's relationship with his widow was made an issue in the probate proceedings before trial in this case even began. As the trial court noted, GPC and NAPA were monitoring those proceedings and could have recognized that issue's relevance to loss of consortium damages. But GPC and NAPA did not make any arguments regarding the appropriate amount of damages until after the jury returned its verdict. Instead, their strategy at trial focused overwhelmingly on denying liability. Coogan's family and attorney are not responsible for GPC and NAPA's liability-focused trial strategy or their resulting lack of diligence in pursuing probate evidence that could have challenged Coogan's claimed damages. Under these circumstances,

we hold the trial court did not abuse its discretion by denying GPC and NAPA's CR 60 motion for relief from judgment.

## CONCLUSION

At the end of a 12 week trial, a unanimous jury rendered a verdict that is supported by substantial evidence. Though that verdict is undeniably large, nothing in the record unmistakably indicates it was the result of passion or prejudice or lies so beyond the bounds of justice that no reasonable person could believe it is correct. The trial court did not abuse its discretion by denying posttrial motions to set that verdict aside as excessive. Nor did the trial court abuse its discretion by excluding Dr. Schuster's testimony or by denying the motion for relief from judgment based on newly discovered evidence. Accordingly, we reverse the Court of Appeals in part and reinstate the jury's verdict in full.

*Coogan v. Borg-Warner Morse Tec Inc., et al.*, No. 98296-1

Stephens, J.

WE CONCUR:

González, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.

44